FH Healthcare Development, Inc., and
United/Dynacare, LLC., Plaintiffs-Appellants,

v.

City of Wauwatosa, Defendant-Respondent.

Court of Appeals

*No. 03–2999. Oral argument July 8, 2004.—Decided
August 17, 2004.*

**2004 WI App 182**

(Also reported in 687 N.W.2d 532.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David J. Edquist* and *Linda S. Isnard* of *Von Briesen & Roper, S.C.*, of Milwaukee, with oral argument by *David J. Edquist*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Alan R. Kesner*, city attorney, and *Beth Thorson Aldana*, assistant city attorney, with oral argument by *Beth Thorson Aldana*.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. FH Healthcare Development, Inc. (FHHD), United/Dynacare, LLC, and the City of Wauwatosa (the City) appeal from the trial court's denial of their cross-motions for summary judgment. This court granted the joint petition for interlocutory appeal, pursuant to Wis. Stat. Rule 809.50(2) (2001–02).[1] FHHD and United/Dynacare filed a property tax exemption action, pursuant to Wis. Stat. § 74.35(3)(d), seeking to recover the full amount of taxes paid, which they allege were levied unlawfully, plus interest, from the City. Both sides moved for summary judgment, and agreed that the facts are undisputed.

¶ 2. FHHD and United/Dynacare essentially argue that the taxed laboratory space and equipment are used for the exempt purposes of Froedtert Memorial Lutheran Hospital, Inc. (Froedtert), pursuant to Wis. Stat. § 70.11(4m), and thus should not have been taxed. They contend that, at a minimum, the property is entitled to a partial exemption under Wis. Stat. §§ 70.1105 and 70.11. Finally, they argue that the

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

FHHD building should not have been assessed for the 2000 tax year because it was still under construction and not being used for any non-exempt purposes as of that date.

¶ 3. The City insists that the laboratory space and equipment are used for commercial purposes and are thus not exempt under WIS. STAT. § 70.11(4m), and furthermore, that the property is not subject to partial taxation under WIS. STAT. §§ 70.1105 or 70.11. The City also insists that the assessment of the FHHD building for the 2000 tax year was proper because it was based on the percentage of completion as of the date of assessment.

¶ 4. Because we conclude that, as a matter of law, the laboratory space and equipment are not exempt, and the City properly assessed the property for the relevant tax years, we reverse the trial court's denial of the City's motion for summary judgment.

## I. BACKGROUND.

¶ 5. In order to understand the nature of the dispute, it is necessary to first identify the relevant entities and their relationships. From 1992 to 1995, Froedtert's laboratory services were provided by United Regional Medical Services, Inc. (URMS), a non-stock, non-profit Wisconsin corporation. Until 1995, Froedtert and Milwaukee County were the sole members of URMS. URMS charged Froedtert on a cost basis, rather than a market-based standard fee-for-service. In 1995, URMS's chief financial officer submitted an affidavit to the City in support of its request for tax exemption. The affidavit indicated, *inter alia,* that URMS performs lab services solely for Froedtert and John L. Doyne Medical Center (formerly the Milwaukee County Medical Com-

plex), it charges for its services on a cost basis, Froedtert employs the physicians that perform the lab services, and the City would be notified if it commenced any services outside of its relationship with the hospitals and their patients. The City thereafter advised URMS that its property was exempt pursuant to Wis. Stat. § 70.11(4m).

¶ 6. Shortly thereafter, in December 1995, Milwaukee County transferred its interest to Froedtert, and Froedtert became the sole member of URMS. URMS continued to provide lab services to Froedtert until 1997. In 1997, URMS and Dynacare, Inc., a for-profit, NASDAQ-traded corporation based in Dallas, Texas, formed United/Dynacare LLC, a Wisconsin limited liability company, with each holding a fifty percent membership interest.[2] United/Dynacare continued to provide Froedtert's laboratory services, but did not assume the radiological functions that URMS provided to Froedtert. URMS continued to provide those services until November 2000, when they were "consolidated back" into Froedtert's internal operations.

¶ 7. When United/Dynacare was formed, it also began performing laboratory services for clients other than Froedtert and the Medical College of Wisconsin (MCW),[3] including other physicians, physician groups,

---

[2] Dynacare, Inc. was a for-profit, NASDAQ-traded corporation through January 1, 2002.

[3] According to the stipulated facts, "URMS provided laboratory services to [MCW] prior to the formation of United/Dynacare[, and] United/Dynacare continues to provide laboratory services to [MCW]." Further, "[l]aboratory specimens at United/Dynacare are made available for research and educational purposes for Froedtert Hospital's medical staff at [MCW], medical residents, interns and fellows in Froedtert Hospital's residency program, and the Medical College students."

managed care organizations, clinics, and hospitals. These services were billed on a market-based pricing structure, intending to cover costs and overhead and generate income. United/Dynacare's members realize income from the services performed for these "outside" clients. In 2000, 31.6% of United/Dynacare's revenue was attributable to services provided to "outside" clients, or, in other words, "reference lab work." In 2001 and 2002, 39.3% and 41.3% of its revenue, respectively, was attributable to reference lab work.

¶ 8. In 2000, URMS assigned its United/Dynacare interest to Froedtert Health System, Inc. (FHS), a Wisconsin, non-stock corporation, and the sole corporate member of Froedtert. URMS was subsequently dissolved, and Froedtert informed the City that United/Dynacare would continue to provide laboratory services to Froedtert and other clients, that the lab had moved into a different facility, and that it believed that its tax-exempt status remained unchanged.

¶ 9. United/Dynacare moved its laboratory equipment into the FHHD Building. FHHD, a party in this appeal, is a non-stock, not-for-profit Wisconsin corporation "formed to assist Froedtert Hospital with financing, construction, and maintenance of buildings used by Froedtert Hospital and other related organizations on the Froedtert Hospital campus." The FHHD Building was constructed on a portion of land owned by Milwaukee County that FHHD subleased from Froedtert. It is connected to the hospital and was constructed with the proceeds of tax-exempt bond financing and a loan from Froedtert. FHHD leases space in the Building to United/Dynacare, with the initial lease term having commenced on July 1, 2000, although United/Dynacare did not move into the space until the end of that

month.[4] The relevant laboratory equipment is located in the portion of the FHHD Building leased to United/Dynacare, and operated, with limited exception, by United/Dynacare personnel.

¶ 10. FHHD also leases space in the building to MCW and Froedtert. MCW is a non-stock, not-for-profit Wisconsin corporation, and provides physician services to Froedtert patients and patients of other MCW clinics, and provides medical educational services. Furthermore, Froedtert's medical staff—the MCW Department of Pathology—directs United/Dynacare's laboratory operations.

¶ 11. As of January 1, 2000, the FHHD building was still under construction, and there was no leasehold income received by FHHD until August 2000. FHHD uses all of the proceeds of the rent paid by United/Dynacare for "maintenance of the leased property and retirement of the" construction debt.

¶ 12. In February 2001, United/Dynacare submitted a "2001 Statement of Personal Property" to the City, claiming a continuing tax-exemption for United/ Dynacare's laboratory equipment. In July, the City notified United/Dynacare that it was rejecting United/Dynacare's claim that the equipment was tax exempt and that it intended to assess the "omitted" property for 1999 and 2000. The City also advised Froedtert that it was investigating the taxability of the lab space being leased to United/Dynacare in the FHHD Building. Later that month, the City sent United/Dynacare a notice of assessment for the omitted 1999 and 2000 taxes, and for 2001 taxes. The City also sent a notice of assessment for omitted 2000 taxes, and for 2001 taxes, to FHHD in regard to the laboratory space.

---

[4] United/Dynacare began paying rent to FHHD in August 2000.

¶ 13. The following November, the City issued property tax bills to both United/Dynacare and FHHD for the omitted personal property taxes. Both paid the bills in full, although under protest, and timely filed claims for recovery of the taxes. In December, the City issued property tax bills to both United/Dynacare and FHHD, which were also paid in full under protest. Both again filed timely claims for recovery of the taxes. In March 2002, the City rejected United/Dynacare and FHHD's claims for recovery of the taxes. In December 2002, the same basic pattern ensued, and the parties projected that the claims for recovery would be largely disallowed prior to the hearing on the summary judgment motion.[5]

¶ 14. On May 31, 2002, United/Dynacare and FHHD filed suit against the City, pursuant to WIS. STAT. § 74.35(3)(d), seeking to recover the full amount of taxes paid for 1999 through 2002, plus interest. Agreeing that the facts are undisputed, United/Dynacare, FHHD, and the City filed cross-motions for summary judgment based on stipulated facts. The trial court denied the motions and set the case for trial. We granted the joint petition for an interlocutory appeal.

## II. ANALYSIS.

¶ 15. "When called upon to review the denial of a summary judgment motion, we must apply the standards set forth in [WIS. STAT. §] 802.08 . . . in the same

---

[5] What they expected to be allowed, however, was the claim for recovery concerning FHHD's bill in regard to the tax for "other personal property." The property tax bill issued to FHHD in December 2002 included taxes of $228,767 for the laboratory space and $210,094 for other personal property.

manner as the trial court." *Germanotta v. National Indem. Co.,* 119 Wis. 2d 293, 296–97, 349 N.W.2d 733 (Ct. App. 1984). That methodology is well known, and need not be repeated here. *See* § 802.08; *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

*A. The laboratory equipment and space are not exempt under* WIS. STAT. *§ 70.11(4m).*

¶ 16. FHHD and United/Dynacare insist that: (1) "Wisconsin's nonprofit hospital exemption applies to space and equipment used in the operation of a hospital laboratory where the property is 'reasonably necessary' to the hospital's primary purpose of providing medical care and treatment to its patients, as well as to its secondary purpose of serving as a teaching hospital"; (2) "[t]he laboratory property need not be used by hospital personnel in order to qualify for the nonprofit hospital exemption"; and (3) "[t]he laboratory property is exempt under § 70.11(4m) regardless of whether one of United/Dynacare's members is a for-profit entity[,]" and at the very least, is entitled to a partial exemption. We are unpersuaded.

¶ 17. Statutory interpretation is a question of law, and "[t]he purpose of statutory interpretation is to give effect to the plain meaning of the words in the statute." *State v. Lombard,* 2004 WI 95, ¶ 18, 273 Wis. 2d 538, 684 N.W.2d 103. "Extrinsic sources are not consulted unless the language of a statute is determined to be ambiguous." *Id.,* ¶ 19. However, "scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the

text and structure of the statute itself, rather than extrinsic sources, such as legislative history." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 48, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 18. "The construction of a tax exemption statute under a particular set of facts is a question of law" that we review *de novo. St. Elizabeth Hosp., Inc. v. City of Appleton*, 141 Wis. 2d 787, 790, 416 N.W.2d 620 (Ct. App. 1987). "However, the burden of showing that property is exempt is on the party seeking the exemption, and doubts are to be resolved in favor of taxability[,]" *id.* at 791; that is, "[t]axation is the rule and exemption from taxation is the exception[,]" *St. Clare Hosp. of Monroe, Wisconsin, Inc. v. City of Monroe*, 209 Wis. 2d 364, 369, 563 N.W.2d 170 (Ct. App. 1997) (quoted source omitted); *see also* Wis. Stat. § 70.109. Indeed, as "[t]ax exemption statutes are matters of legislative grace[, they] are to be strictly construed against the granting of an exemption." *St. Clare*, 209 Wis. 2d at 369 (quoted source omitted). Thus, we apply a "strict but reasonable construction" in interpreting tax exemption statutes. *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 80, 591 N.W.2d 583 (1999).

¶ 19. Wisconsin Stat. § 70.11(4m) provides, in relevant part:

> **Property exempted from taxation.** . . . . Property exempted from general property taxes is:
>
> . . . .
>
> Nonprofit hospitals. (a) Real property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to

the diagnosis, treatment or care of the sick, injured, or disabled[.] . . . *This exemption does not apply to property used for commercial purposes, as a health and fitness center or as a doctor's office.*

(Emphasis added.) As such, if the property, regardless of whether it is used "exclusively for the purposes of any hospital . . . devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled[,]" is used for commercial purposes, it does *not* qualify for the exemption. Thus, the essential inquiry is whether the property is used for commercial purposes; if so, the exemption does not apply, regardless of whether the property is "reasonably necessary" to the hospital's primary and secondary purposes or who uses the equipment.

¶ 20. The question thus becomes: what does "commercial purposes" mean? As it is undefined by the statute itself, it "shall be construed according to common and approved usage[.]" WIS. STAT. § 990.01(1). The common and approved usage of non-technical words can be ascertained from their dictionary definitions. *See Enpro Assessment Corp. v. Enpro Plus, Inc.*, 171 Wis. 2d 542, 546, 492 N.W.2d 325 (Ct. App. 1992). Included in the dictionary definitions of "commercial" are "from the point of view of profit" and "having profit as the primary aim." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 456 (1993). As such, commercial purposes are those through which profits are made.

¶ 21. Here, although United/Dynacare provides laboratory services for Froedtert at cost, it also performs laboratory services for clients other than Froedtert and MCW, and bills those clients on a market-based pricing structure, covering costs and overhead, and

generating income. This "reference lab work" has generated millions of dollars in net revenues for United/Dynacare. Thus, it seems reasonable to conclude that this reference lab work constitutes a commercial purpose. The lab equipment and space, therefore, would not be exempt pursuant to Wis. Stat. § 70.11(4m).

¶ 22. As such, it matters not whether the case law recognizes that a modern hospital may have multiple purposes and that "property is considered to be used 'for' the exempt purposes of the hospital as long as the property is 'reasonably necessary' for the hospital to accomplish those purposes."[6] Even if the property is reasonably necessary to the primary and secondary purposes of the hospital, a strict but reasonable construction of Wis. Stat. § 70.11(4m) indicates that the property fails to qualify for the exemption because it nevertheless is used for a commercial purpose. Having concluded that the lab equipment and space fall within the commercial purpose exception to the exemption,

---

[6] In *Columbia Hospital Association v. City of Milwaukee*, 35 Wis. 2d 660, 668, 151 N.W.2d 750 (1967), the supreme court recognized that Wis. Stat. § 70.11(4m)

> has carefully expressed the exemption in terms of a hospital whose primary purpose is diagnosis, treatment and care and this contemplates that a hospital may have other functions and objects, whether they be directly or indirectly associated with the care of the sick. The language of the section refers to property used exclusively for the purposes of the hospital. This means any and all purposes, not just for the primary purpose of care, diagnosis or treatment.

It accordingly acknowledged an exemption, under the language of § 70.11(4m), for property reasonably necessary for the secondary purpose of serving as a teaching hospital. *See Columbia Hosp.*, 35 Wis.2d at 674.

regardless of whether the property is reasonably necessary to the hospital's primary or secondary purposes, any arguments concerning the significance of hospital possession, ownership, and use of the equipment and whether the *First National Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 260 N.W.2d 251 (1977), "test" is dictum, are essentially irrelevant.

¶ 23. United/Dynacare argues, however, that the commercial purpose exception does not apply because the "presence of a for-profit entity does not automatically trigger the 'commercial purpose' exception[.]" It insists that the legislature's use of the term "commercial purposes" instead of "for profit" is significant, and that the supreme court "has repeatedly stressed the need to focus on the *actual use* of the property in determining the eligibility for a property tax exemption, not on the 'nature of the business seeking the exemption.' " (Emphasis in brief; citation omitted.)

■■

¶ 24. United/Dynacare is correct to assert that the "presence" of a for-profit entity does not automatically trigger the "commercial purpose" exception, and that the actual use of the property should be the focus. However, these assertions do not undermine the conclusion that the property does not qualify for the exemption. Here, the actual use included a commercial purpose. Moreover, the for-profit nature of the entity is not the basis for this conclusion. As indicated above, the property is deemed to be used for a commercial purpose because of the market-based pricing structure employed in charging the "outside" clients for the reference lab work and the millions of dollars in net revenues.

¶ 25. United/Dynacare also cites *First National Leasing* in support of its contention that "the key inquiry is in whether the property is used exclusively

for hospital purposes, *not* in whether the owner of the property generates a profit[,]" quoting the following language:

> [T]he legislature made no attempt to predicate taxability on whether an owner derived a profit or other benefit from property which was used exclusively for hospital purposes.
>
> . . . .
>
> . . . [I]t is the physical use of the property and not the intangible benefits derived from property with which the legislature is concerned in tax exemption statutes . . . .
>
> It is irrelevant that an owner derives a profit or secures a benefit from the ownership.

81 Wis. 2d at 210–12. However, aside from the fact that *First National Leasing* is factually distinct from the instant case, the version of WIS. STAT. § 70.11(4m) at issue in that case did not include the relevant language central to the disposition of this case—"[t]his exemption does not apply to property used for commercial purposes[.]" § 70.11(4m); *see also First National Leasing*, 81 Wis. 2d at 207 (quoting the language of the version of the statute applicable to the case). *First National Leasing* concerned the version of the statute applicable to the tax years of 1972 and 1973. Section 70.11(4m) was amended in 1977 to include the relevant language. *See* 1977 Wis. Act 29, § 745m. Thus, the supreme court's aforementioned conclusions regarding the statute prior to the addition of the "commercial purpose" language are inapposite.

¶ 26. In regard to the lab space, FHHD argues that, pursuant to the preamble to WIS. STAT. § 70.11, the leased lab space "remains" exempt because it satisfies

both the "rent use" and "tenant identity" conditions. The preamble states, in relevant part:

> Leasing a part of the property described in this section does not render it taxable if the lessor uses all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both *and* if the lessee would be exempt from taxation under this chapter if it owned the property.

§ 70.11 (emphasis added). However, aside from the potential underlying question of whether this directive even applies in this case, given the fact that there does not appear to be an ownership requirement in § 70.11(4m), this language presumes that the property is exempt in the first place. As the leased laboratory space is characterized as personal property and is used for a commercial purpose, it similarly fails to qualify for the § 70.11(4m) exemption, and likewise would not be exempt from taxation if United/Dynacare owned it.

¶ 27. Finally, in regard to the issue of partial taxation, United/Dynacare and FHHD contend that even if we determine that the property does not qualify for the Wis. Stat. § 70.11(4m) exemption, as we have, they are at least entitled to a partial exemption, under Wis. Stat. § 70.1105 (for the equipment) and the preamble to Wis. Stat. § 70.11 (for the laboratory space), "for any nonprofit use." United/Dynacare argues that property can be used for both exempt and non-exempt purposes, and § 70.1105 provides a means by which property can qualify for a "partial exemption." FHHD, acknowledging that the leased laboratory space falls outside the literal scope of § 70.1105, contends that it instead qualifies for the "partial preamble exemption" because the leased property satisfies the "rent use" and

"tenant identity" conditions of the § 70.11 preamble, as previously argued. After a careful review of §§ 70.11(4m) and 70.1105, we are unpersuaded.

¶ 28. WISCONSIN STAT. § 70.1105 provides:

**Taxed in part. (1)** *Property that is exempt under s. 70.11 and that is used in part in a trade or business for which the owner of the property is subject to taxation* under sections 511 to 515 of the internal revenue code, as defined in s. 71.22 (4m), shall be assessed for taxation at that portion of the fair market value of the property that is attributable to the part of the property that is used in the unrelated trade or business. This section does not apply to property that is leased by an exempt organization to another person or to property that is exempt under s. 70.11 (34).

(Emphasis added.) A close reading of § 70.1105, and a review of the relevant WIS. STAT. § 70.11 exemptions, appears to indicate that perhaps the partial taxation statute was not intended to apply to the personal property portion of § 70.11(4m) at all, or, at the very least, that it does not apply here. There is a distinct difference in the specific language used in the personal property portion of § 70.11(4m) and many, but by no means all, of the other § 70.11 exemptions that lends support for this conclusion—there is no "ownership" requirement for the personal property exemption under § 70.11(4m).[7] That is, property qualifies for the exemption under § 70.11(4m) solely on the basis of how the property is used, and *not* by virtue of *who* owns it *and* how it is used or by whom.

---

[7] Indeed, WIS. STAT. § 70.11(4m) states: "Real property owned and used and *personal property used exclusively for* the purposes of any hospital . . . ." There is no ownership qualification in the personal property clause.

260

¶ 29. Compare, for example, the relevant language in WIS. STAT. § 70.11(4), (5), (6), (7), (13), and (28), respectively: "Property owned and used exclusively by educational institutions . . . or by churches or religious, educational or benevolent associations . . . ."; "Property owned and used exclusively by any state or county agricultural society, or by any other domestic corporation formed to encourage agricultural and industrial fairs and exhibitions and necessary for fairgrounds or for exhibition and sale of agricultural and dairy property . . . ."; "Property of any fire company used exclusively for its purposes."; "Land owned by military organizations and used for armories, public parks or monument grounds but not used for private gain."; "Land owned by cemetery authorities . . . and used exclusively as public burial grounds and tombs and monuments therein, and privately owned burial lots; land adjoining such burial grounds, owned and occupied exclusively by the cemetery authority for cemetery purpose . . . ."; "Property owned and operated by a humane society organized primarily for the care and shelter of homeless, stray or abused animals, on a nonprofit basis, no part of the net income of which inures to the benefit of any member, officer or shareholder, if the property is used exclusively for the primary purpose of the humane society." As we have seen, § 70.11(4m), on the other hand, states: "Real property owned and used and *personal property used exclusively for* the purposes of any hospital . . . ." There is no ownership qualification in the personal property clause.

¶ 30. Now, turning back to WIS. STAT. § 70.1105, "[p]roperty that is exempt under s. 70.11 and that is used in part in a trade or business for which the owner of the property is subject to taxation" under certain provisions of the internal revenue code is subject to

261

partial taxation. It would be counterintuitive, for a number of reasons, to interpret that provision to mean that property must be completely exempt under some subsection of § 70.11 in order for § 70.1105 to apply. On the other hand, it would make sense for § 70.1105 to apply to property that qualifies for exemption by virtue of the identity of the owner and the use of the property, when a separate unrelated use may render the property partially amenable to taxation.

¶ 31. Indeed, in *Deutsches Land,* the case United/Dynacare cites in support of its proposition that WIS. STAT. § 70.1105 provides a means by which property can qualify for a "partial exemption," the supreme court indicated the following when considering the interrelation of the taxed-in-part statute and WIS. STAT. § 70.11(4) (the exemption applicable to benevolent institutions):

> We note that [§ 70.1105] begins with "Property that is exempt under this section . . . ." Read literally, this phrase may require property to be totally exempt under the statute in order for subsection (8) to apply. This would mean that the property needs to be "used exclusively" by the exempt organization for exempt purposes.[8] However, such an interpretation would render [§ 70.1105] meaningless. *The reason an exempt organization seeks a partial exemption is precisely because it does not exclusively use its property for exempt purposes. Our interpretation of [§ 70.1105] must give effect to the [section's] overall purpose of allowing an exempt organization to claim partial exemptions.*[9]

---

[8] WISCONSIN STAT. § 70.11(4) provides, in relevant part: *"Property owned and used exclusively by . . .* churches or religious, educational or benevolent associations . . . ." (Emphasis added.)

[9] In 1997, WIS. STAT. § 70.11(8) was repealed and recreated as WIS. STAT. § 70.1105. *Deutsches Land, Inc. v. City of Glendale,*

*Deutsches Land,* 225 Wis. 2d at 89 n.9 (footnotes and emphasis added.) *Deutsches Land* is distinct from the instant case in a number of ways, but the essence of this explanation lends support to the conclusion that, perhaps, § 70.1105 was never meant to apply to § 70.11(4m) at all, since the identity of the owner of the property is irrelevant for the § 70.11(4m) personal property exemption. Or, if not, at the very least, § 70.1105 does not apply here, because the owner of the laboratory equipment, United/Dynacare, is not an exempt entity.

¶ 32. Moreover, as FHHD has conceded that the laboratory space does not fall within the literal scope of WIS. STAT. § 70.1105—"[t]his section does not apply to property that is leased by an exempt organization to another person"—we need only address its partial taxation argument in regard to the "partial preamble exemption." As a similar argument, based upon the "rent use" and "tenant identity" conditions, was rejected above, this argument fails as well.

*B. The City properly assessed the property for the 2000 tax year.*

¶ 33. FHHD insists that the FHHD Building "should not have been assessed for the tax year 2000 since it was still under construction and was not being

225 Wis. 2d 70, 88 n.8, 591 N.W.2d 583 (1999). "That legislative action only altered the placement of the statutory provision and did not alter its substance in any way." *Id.* Since *Deutsches Land* concerned the years of 1993–95, the supreme court referred to the statute as § 70.11(8) throughout its opinion. We have altered the quote to include the current designation of § 70.1105, as the statute has merely been renumbered, to avoid any confusion for the purposes of this opinion.

used for any non-exempt activities as of that date." FHHD argues that as of January 1, 2000, "the entire FHHD building, including the laboratory space, was being prepared for use in furtherance of the tax-exempt purposes of Froedtert Hospital." As such, FHHD maintains that newly constructed properties, while being readied for exempt purposes, qualify for exemption. Furthermore, FHHD insists that even if it is determined that the space is used for a commercial purpose, and thus is not exempt under WIS. STAT. § 70.11(4m), the space could not have been used for any commercial purpose until United/Dynacare actually occupied the space—July 2000—seven months after it was assessed for the 2000 tax year.

¶ 34. The City insists that it properly assessed the FHHD Building on the basis that it was vacant and partially constructed. The City also challenges FHHD's assertion that it was being readied for an exempt purpose, and indeed contends that "it was not destined for any exempt purpose at all." Thus, it argues that it properly assessed the property according to the relevant assessment manual.

¶ 35. In *Family Hospital Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 254 N.W.2d 268 (1977), *overruled on other grounds by Burlington Northern Railroad Co. v. City of Superior*, 159 Wis. 2d 434, 464 N.W.2d 643 (1991), the supreme court concluded that an unoccupied, but constructed nursing home "equipped and in the process of readying itself for the receipt of its first patient[,]" i.e., acquiring a staff of personnel, "was not used for any other purpose during th[is] period[,]" and "should not be taxable during the period in which it was readying itself for its benevolent purpose." *Id.* at 323. On the other hand, in *Dominican Nuns v. City of La Crosse*, 142 Wis. 2d 577, 419 N.W.2d

270 (Ct. App. 1987), this court concluded that "[a] fully constructed and equipped nursing home awaiting its patients is a far different thing from vacant land and buildings in the process of disposal by an entity already occupying new premises elsewhere." *Id.* at 580. In *Dominican Nuns*, the order had already relocated to a new facility during the relevant tax period, but continued to heat the vacant building, keep it in repair, list it for sale, and maintain a mortgage. We concluded that "[t]he property was not being 'used' for any of the order's regular activities or benevolent purposes." *Id.* at 581. The former convent was vacant and unoccupied, except for a "locally-retained maintenance person," and as such, did not qualify for exemption under WIS. STAT. § 70.11(4). *Id.*

¶ 36. Here, there is no indication that, as in *Family Hospital*, the FHHD building was fully constructed and equipped, and in the final stages of readying itself for an exempt purpose. While FHHD contends that the entire building "was being prepared for use in furtherance of the tax-exempt purposes of Froedtert Hospital[,]" it has failed to establish that. Such a self-serving, conclusory statement regarding the partially constructed building hardly equates the FHHD Building with the nursing home in *Family Hospital*. Furthermore, regarding FHHD's contention that the space could not possibly have been used for a commercial purpose until it was completed and occupied by United/Dynacare, we note that the relevant case law appears to be concerned with the use of the property at the time of assessment, and again, FHHD has failed to provide us with enough to establish that it was being readied for an exempt purpose. Indeed, "the burden of showing that property is exempt is on the party seeking the exemption, and doubts are to be resolved in favor of

taxability[,]" *St. Elizabeth Hosp.*, 141 Wis. 2d at 791; taxation is the rule, and exemption is the exception, WIS. STAT. § 70.109.

¶ 37. As there are no disputed issues of material fact, by virtue of the stipulations of the parties, the only remaining issue is a question of law—does the property qualify for the exemption? We conclude that, as a matter of law, it does not. As such, the City is entitled to summary judgment.

*By the Court.*—Order reversed.