S<small>TATE</small> of Wisconsin, Plaintiff-Respondent,

v.

Michael A. D<small>E</small>L<small>AIN</small>,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP1253–CR. Oral argument December 6, 2004.— Decided April 26, 2005.*

2005 WI 52

(Also reported in 695 N.W.2d 484.)

For the defendant-appellant-petitioner there were briefs by *Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, and oral argument by *Robert R. Henak.*

For the plaintiff-respondent the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. Michael A. DeLain requests review of a published decision of the court of appeals, *State v. DeLain,* 2004 WI App 79, 272 Wis. 2d 356, 679 N.W.2d 562. The court of appeals affirmed a judgment of conviction, as well as an order denying post-conviction relief, of the circuit court for Brown County, the Honorable Richard J. Dietz presiding. We review whether the evidence presented to the jury was sufficient to sustain a conviction for sexual exploitation by a therapist, contrary to Wis. Stat.

§ 940.22(2) (2001–02),[1] and in particular, whether a finding that there was "an ongoing therapist-patient . . . relationship" during a therapy session is precluded if the victim was secretly recording that session in cooperation with police.

¶ 2. We conclude that, for the purpose of establishing criminal liability under Wis. Stat. § 940.22(2), whether there is an ongoing therapist-patient relationship is determined by examining the totality of the circumstances. We also conclude that J.F.'s assisting the police by recording her therapy session is not sufficient to preclude a finding that a therapist-patient relationship was ongoing. Further, based on the totality of the circumstances, which in this case included a stipulation that DeLain provided therapy to J.F. on all her visits, a rational trier of fact could have found beyond a reasonable doubt that an ongoing therapist-patient relationship existed on May 2, 2001. We therefore affirm the decision of the court of appeals, although on different grounds.

## I. BACKGROUND

¶ 3. J.F., a 16–year old, had five psychotherapy sessions with Dr. Michael DeLain in April and May 2001. After the fourth session, on April 25, 2001, she told her family that she did not want to see DeLain again because he had sexually assaulted her during therapy. J.F. and her parents then went to the police. At law enforcement's request, J.F. returned for a final session with DeLain on May 2, 2001, to surreptitiously audio- and video-record the session. DeLain was subsequently charged with multiple criminal counts, includ-

---

[1] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

ing a count of sexual exploitation by a therapist under Wis. Stat. § 940.22(2) based on the allegation that DeLain had sexual contact with J.F. during the May 2, 2001 session.

¶ 4. A jury trial was conducted, wherein DeLain and the State stipulated to the following: "In April and May, 2001, Dr. Michael DeLain was a psychologist who performed psychotherapy on patients, including [J.F.]."

¶ 5. At trial, DeLain testified to the method of therapy he used to treat J.F., his diagnosis of J.F. and his efforts to assist J.F. He denied any sexual contact with J.F. and addressed specific acts that were alleged to have occurred. He also testified that when he told J.F. he would be reporting her sexual relationship with an adult to authorities, she became angry and threatened to make accusations against him. DeLain also called others to testify on his behalf, including social service agency employees, who testified that DeLain had made a report that J.F. was having sex with an adult, and other witnesses who testified to DeLain's nonexploitative character.

¶ 6. In closing argument, the State asserted that it was stipulated to and agreed upon that J.F. and DeLain had a therapist-patient relationship during the time period relevant to the conduct alleged to be criminal. In DeLain's closing argument, he did not disagree, but instead argued to the jury that no sexual contact occurred. The jury convicted DeLain of the count at issue in this review, as well as two of the other counts charged.

¶ 7. In a post-conviction motion, DeLain requested the circuit court to vacate the conviction for sexual exploitation by a therapist that resulted from the May 2, 2001 session because the evidence was insufficient to establish that the alleged sexual contact took

place during an "ongoing therapist-patient relationship," as required by Wis. Stat. § 940.22(2). The circuit court denied DeLain's motion. The court of appeals affirmed, and we subsequently granted DeLain's petition for review.

## II. DISCUSSION

¶ 8. Wisconsin Stat. § 940.22(2) prohibits sexual contact between a therapist and a patient or client. The statute states:

> Sexual contact prohibited. Any person who is or who holds himself or herself out to be a therapist and who intentionally has sexual contact with a patient or client during any ongoing therapist-patient or therapist-client relationship, regardless of whether it occurs during any treatment, consultation, interview or examination, is guilty of a Class F felony. Consent is not an issue in an action under this subsection.

Section 940.22(2).

¶ 9. To obtain a conviction for a violation of Wis. Stat. § 940.22(2), the State must prove three elements beyond a reasonable doubt: (1) that the defendant was or held himself or herself out to be a therapist; (2) that the defendant had intentional sexual contact with a patient or client; and (3) that the sexual contact occurred during an ongoing therapist-patient or therapist-client relationship.[2] *State v. Miller,* 2002 WI App 197, ¶ 17 n.5, 257 Wis. 2d 124, 650 N.W.2d 850; *see*

---

[2] We note that the pattern jury instructions open by stating, "Sexual exploitation by a therapist, as defined in § 940.22 . . . is committed by one who is or holds himself out to be a therapist and who *intentionally* has sexual contact with a patient or client during any ongoing therapist-patient or therapist-client rela-

*also State v. Ambrose,* 196 Wis. 2d 768, 777, 540 N.W.2d 208 (Ct. App. 1995) (holding that the actor and the complainant "must be engaged in a professional therapist-patient/client relationship").

¶ 10. DeLain contends there was not sufficient evidence to find the third element, that sexual contact occurred during an ongoing therapist-patient or therapist-client relationship, beyond a reasonable doubt. Our review of DeLain's contention, in light of actual trial testimony, presents us with a limited record because DeLain's defense was that sexual contact did not occur, not that there was no ongoing therapist-patient relationship. Rather than try the third element of Wis. Stat. § 940.22(2), DeLain stipulated that he was performing psychotherapy on J.F. during May 2001.[3]

## A. Standard of Review

¶ 11. Notwithstanding the way in which this case was tried, we have been asked to determine when evidence is sufficient to prove that an ongoing

---

tionship," Wis JI—Criminal 1248 (emphasis added). This opening statement appropriately includes intent. However, in stating that the second element of the crime is the defendant's sexual contact with the victim during the relationship, and in describing this second element, the instructions fail to include intent. *See id.* (stating, "Second, that the defendant had sexual contact with (name of victim)," and later stating, "The second element requires that the defendant had sexual contact with (name of victim)."). We therefore suggest review of these instructions.

[3] The only time DeLain and J.F. saw one another in May 2001 was May 2, 2001, when the sexual contact that forms the basis for the criminal conviction at issue here was alleged to have occurred.

therapist-patient relationship existed, as that phrase is used in Wis. Stat. § 940.22(2). This requires interpretation of § 940.22(2). Interpretation of a statute is a question of law that we review de novo. *Johnson v. ABC Ins. Co.,* 193 Wis. 2d 35, 43, 532 N.W.2d 130 (1995). Additionally, when we review the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ambrose,* 196 Wis. 2d at 772 (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

B. Wisconsin Stat. § 940.22(2)

¶ 12. To interpret the phrase "during any ongoing therapist-patient . . . relationship" in Wis. Stat. § 940.22(2), we begin by examining the plain meaning of the statutory language, in context, as is required by *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole . . . and reasonably, to avoid absurd or unreasonable results." *Id.*

¶ 13. In interpreting the meaning of "during any ongoing therapist-patient . . . relationship," the court of appeals decision drew on Wis. Stat. § 939.23(3)[4] to conclude that whether there was an ongoing therapist-

---

[4] Wisconsin Stat. § 939.23(3) states:

"Intentionally" means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result. In addition, except as provided in sub. (6), the actor must have knowledge of

patient relationship turned solely on DeLain's subjective belief. *DeLain,* 272 Wis. 2d 356, ¶¶ 10–12. The court of appeals explained, "[B]ecause the undisputed evidence is that DeLain believed the specific fact existed, namely that [J.F.] was a patient and this was part of the ongoing therapist-patient relationship, any acts that occurred during this session were during an ongoing therapist-patient relationship as those terms are used in the statute." *Id.,* ¶ 12.

■

¶ 14. DeLain disagrees with the court of appeals, arguing that the therapist's belief that a therapist-patient relationship is ongoing does not establish that the relationship is actually ongoing in fact. The State also disagrees with the court of appeals' reasoning, conceding that the factual question of whether a therapist-patient relationship is ongoing does not turn solely on what the therapist knows. For reasons discussed at length below, we accept the State's concession.

¶ 15. DeLain further argues that the term "relationship," in the phrase "ongoing therapist-patient . . . relationship," requires a "two-way street," with both the therapist and the patient consenting to the continuing relationship. He asserts that the relationship "may be terminated, inter alia, by mutual consent of the parties, or by the unilateral action of the patient." As such, he argues that a patient who goes to the police to complain of sexual contact made by a therapist and agrees to cooperate in a criminal investigation during a subsequent therapy session has acted unilaterally to withdraw from the therapist-patient relationship and continues as only a "feigned" patient. He urges this court to

those facts which are necessary to make his or her conduct criminal and which are set forth after the word "intentionally."

conclude that based on that one circumstance he and J.F. did not have an ongoing therapist-patient relationship on May 2, 2001.

¶ 16. The State argues that, even if we accept its concession regarding the court of appeals' reasoning, we should nevertheless affirm the court of appeals decision. The State asserts that a therapist-patient relationship continues to exist as a matter of law "until one of the parties explicitly and openly advises the other party that the relationship has terminated." The State further counters that it would be inconsistent with the strict obligation that Wis. Stat. § 940.22(2) imposes on therapists to conclude that a patient's secret cooperation with law enforcement terminates an ongoing therapist-patient relationship.

¶ 17. The parties present competing standards for establishing the "ongoing therapist-patient relationship" element of Wis. Stat. § 940.22(2). We need to decide whether those interpretations are reasonable in order to determine whether the statute is ambiguous. *Kalal,* 271 Wis. 2d 633, ¶ 47. "Relationship" is not defined in the statute. Wisconsin Stat. § 990.01(1) instructs that words that are neither defined by statute nor technical in nature shall be defined according to common and approved usage. *Webster's New Collegiate Dictionary* defines "relationship" as "a state of affairs existing *between* those having relations or dealings." *Webster's New Collegiate Dictionary* 975 (1977) (emphasis added); *see also FH Healthcare Dev., Inc. v. City of Wauwatosa,* 2004 WI App 182, ¶ 20, 276 Wis. 2d 243, 687 N.W.2d 532 (concluding that common and approved usage of undefined words may be ascertained from their dictionary definitions). That a relationship exists "between" those having dealings indicates that both parties may have to consent for the relationship to continue.

*See id.* Therefore, DeLain's interpretation, that an ongoing therapist-patient relationship requires continuing mutual consent, appears reasonable based on the plain meaning of the statutory language in question.

¶ 18. However, examining the language under review in the context of the statute as a whole, *Kalal,* 271 Wis. 2d 633, ¶ 46, we also note that the statute's scope is broad, as it includes one who simply "holds himself or herself out to be a therapist." Wis. Stat. § 940.22(2). Stated another way, one who is only pretending to be a therapist is within the scope of those whose behavior comes within the statutory prohibition. Accordingly, the types of relationships in which sexual contact is criminalized are broader than those relationships that are between a therapist in fact and a patient or client. As the statute covers relationships where the interaction may not actually involve the delivery or the receipt of therapy, the State's interpretation that a "relationship" may continue, even if one party is secretly cooperating in a criminal investigation of the therapist, also appears reasonable. Therefore, because both DeLain and the State have set out reasonable interpretations of § 940.22(2), we conclude that this statutory language is ambiguous. Stated another way, it has been "understood by reasonably well-informed persons in two or more senses." *Kalal,* 271 Wis. 2d 633, ¶ 47.

¶ 19. To resolve this dispute, we turn to the legislative history of Wis. Stat. § 940.22(2) for evidence of the legislature's intent. *See Kalal,* 271 Wis. 2d 633, ¶ 51 ("[L]egislative history need not be and is not consulted except to resolve an ambiguity in the statutory language, although [it] is sometimes consulted to confirm or verify a plain-meaning interpretation.").

¶ 20. Before 1986, Wis. Stat. § 940.22(2) read in relevant part: "Any person who is or who holds himself or herself out to be a therapist and who intentionally has sexual contact with a patient or client during any treatment, consultation, interview or examination is guilty." Wis. Stat. § 940.22(2) (1983–84). However, in 1986, the legislature added the language we are examining here, making a therapist culpable for having sexual contact with a patient "during any ongoing therapist-patient or therapist-client relationship, regardless of whether it occurs during any treatment, consultation, interview or examination." Legislative Reference Bureau Drafting File for 1985 Wis. Act. 275, § 6. As the Legislative Reference Bureau Analysis published with the bill that created 1985 Wis. Act. 275 explains, "[T]he bill expands the crime's coverage to apply to sexual contact with a client while there is an ongoing therapist-client relationship, regardless of whether the sexual contact occurs during treatment or examination." 1985 A.B. 776. Further, notes from a meeting with Representative James Rutkowski, who introduced the bill, state that the statute was to be changed to "[r]evise [the] scope of [the] crime to the ongoing period during which treatment occur[s], [e].g. if being treated on a regular outpatient basis, they can't engage in sex outside the office." Legislative Reference Bureau Drafting File for 1985 Wis. Act 275, § 6. This change was made so that the therapist would be criminally liable for sexual contact with a patient, regardless of where that sexual contact took place.

¶ 21. The same legislative act also added the statute's final sentence: "Consent is not an issue in an action under this subsection." 1985 Wis. Act. 275, § 6. This change explicitly removed the patient's consent to

63

the sexual contact as a defense, *see id.,* again broadening the protection afforded to the public.

¶ 22. These two changes recognize the vulnerabilities of a person seeking therapy and the ways in which a therapist, or someone posing as a therapist, may prey upon such a person. While neither of these changes specifically addresses the issue presented here, they do indicate the legislature's intent to give broad protection to the public under Wis. Stat. § 940.22(2).

¶ 23. The State contends that the court of appeals erred in its interpretation of the word "knowledge" in Wis. Stat. § 939.23(3). According to the State, the meaning of the word "knowledge" in the definition of "intentionally" does not derive from or depend on the definition of "know" in § 939.23(2). We note that a therapist-patient relationship is necessarily a trust relationship, *see Ande v. Rock,* 2002 WI App 136, ¶ 10, 256 Wis. 2d 365, 647 N.W.2d 265, and as such, an individual seeking therapy is particularly vulnerable to the influence of the therapist. For a defendant's subjective intent to be the sole determinant of whether an ongoing therapist-patient relationship exists, as held by the court of appeals, would permit a therapist to prey upon a patient who relies on that relationship for help. We conclude that is too narrow a construction of the statute.

¶ 24. Accordingly, we disavow the court of appeals discussion of "intentionally." *DeLain,* 272 Wis. 2d 356, ¶¶ 10–11. Instead, we conclude that it is the totality of the circumstances, which in this case included a stipulation that DeLain provided therapy to J.F. on all her visits, that determines whether there was an ongoing therapist-patient relationship when sexual contact occurred. A defendant's state of mind is one factor in this

totality of the circumstances analysis. Further, a secret unilateral action of a patient may also be a factor, although not necessarily the decisive factor, as urged by DeLain. Similarly, the explicit remarks of one party to the other regarding the status of the relationship may be a factor, but not necessarily the dispositive factor, as proposed by the State. Other factors that may appropriately enter into the analysis include, but are not limited to: how much time has gone by since the last therapy session; how close together the therapy sessions had been to each other; the age of the patient; the particular vulnerabilities experienced by the patient as a result of his or her mental health issues; and the ethical obligations of the therapist's profession.[5] Only

---

[5] For example, rules regarding how a patient or client relationship should be terminated in the therapist's profession may be a factor in this totality of the circumstances analysis. *See* Wis. Admin. Code § Psy 5.01(31) (requiring psychologists to notify clients when service will be interrupted or terminated); Wis. Admin. Code § MPSW 20.02(21) (requiring marriage and family therapists, counselors, and social workers to make reasonable efforts to notify a client or a client's authorized representative when the professional will be terminating services); *see also McManus v. Donlin,* 23 Wis. 2d 289, 300, 127 N.W.2d 22 (1964) (stating that a physician or surgeon's "obligation of continuing attention can be terminated only by the cessation of the necessity which gave rise to the relationship, or by the discharge of the physician by the patient, or by the withdrawal from the case by the physician after giving the patient reasonable notice so as to enable the patient to secure other medical attention").

Further, the administrative rules of professional conduct for some professions explicitly address sexual contact with clients or patients, and such rules may provide useful factors in evaluating the totality of the circumstances. For example, psychologists are prohibited from engaging in sexual contact

upon consideration of all the circumstances that are relevant in a given case may we fully address the legislature's concern for protecting the public.

## C. Sufficiency of the Evidence

■

¶ 25. We now apply the totality of the circumstances standard to the May 2, 2001 session. The testimony was undisputed that DeLain was a licensed psychologist who had provided therapy to J.F. on April

with a client or a former client within two years of the termination of professional services. Wis. Admin. Code § Psy 5.01(14), (14)(a)-(b). In determining whether sexual contact is prohibited with a former client more than two years after professional services have terminated, the psychologist must demonstrate that "there has been no exploitation of the former client" and that "the former client is not vulnerable by reason of emotional or cognitive disorder to exploitive influence by the psychologist." Wis. Admin. Code § Psy 5.01(14)(c). This determination is to be made "in light of all relevant factors," *id.*, including the following:

> 1. The length of time which had passed between the termination of professional services and the conduct.

> 2. The nature and duration of the professional services.

> 3. The circumstances of termination.

> 4. The client's personal history.

> 5. The client's mental status at the time the conduct took place.

> 6. The likelihood of adverse impact on the client or others.

> 7. Statements or actions made by the licensee during the course of professional services suggesting or inviting the possibility of a post-termination sexual or romantic relationship with the client.

Wis. Admin. Code § Psy 5.01(14)(c)1–7.

25, one week prior to the sexual contact at issue here; that J.F. was only 16 years of age; that DeLain knew that J.F. had problems with intimate relationships; that DeLain intended to provide therapy; that during the May 2 therapy session J.F. was wearing a recording device; that J.F. never formally withdrew from therapy; and that the parties stipulated that DeLain was performing psychotherapy on J.F. in May 2001. Based on the totality of these circumstances, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the sexual contact occurred during an ongoing therapist-patient relationship.

### III. CONCLUSION

¶ 26. In sum, we conclude that, for the purpose of establishing criminal liability under Wis. Stat. § 940.22(2), whether there was an ongoing therapist-patient relationship at the time of the sexual contact is determined by examining the totality of the circumstances. We also conclude that J.F.'s assisting the police by recording her therapy session is not sufficient to preclude a finding that a therapist-patient relationship was ongoing during that session. Further, based on the totality of the circumstances, which in this case included a stipulation that DeLain provided therapy to J.F. on all her visits, a rational trier of fact could have found beyond a reasonable doubt that an ongoing therapist-patient relationship existed on May 2, 2001. We therefore affirm the decision of the court of appeals, although on different grounds.

*By the Court.*—The decision of the court of appeals is affirmed.