INTERNATIONAL FOUNDATION OF EMPLOYEE BENEFIT PLANS, INC., f/k/a National Foundation of Health, Welfare & Pension Plans, Inc., Plaintiff-Appellant,†

v.

CITY OF BROOKFIELD, Defendant-Respondent.

Court of Appeals

*No. 78–455. Argued December 19, 1979.— Decided February 26, 1980.*
(Also reported in 290 N.W.2d 720.)

† Petition to review granted.

For the plaintiff-appellant, there was a brief and oral argument by *Timothy C. Frautschi* of *Foley & Lardner* of Milwaukee.

For the defendant-respondent, a brief was submitted by *George A. Schmus*, city attorney of Milwaukee;

*Harold H. Fuhrman,* special counsel, and *Mark W. Ninneman,* of counsel, both of *Wickert & Fuhrman* of Milwaukee. Oral argument by *Harold H. Fuhrman* and *Mark W. Ninneman.*

Before Voss, P.J., Brown and Bode, JJ.

BROWN, J. International Foundation of Employee Benefit Plans, Inc. is seeking to be declared an "educational association" entitling it to an exemption from property taxes pursuant to sec. 70.11(4), Stats.[1] After a trial by jury, the trial court entered a judgment against International Foundation. We affirm the trial court's judgment and hold that International Foundation is not an educational association as contemplated by the statute.

This case reaches the appellate courts for the third time. The first case, *National Foundation v. Brookfield,* 65 Wis.2d 263, 222 N.W.2d 608 (1974), was an appeal by Brookfield from an order overruling a demurrer to International Foundation's complaint. The supreme court reversed and remanded with leave to replead. The significance of the first decision is the supreme court's emphasis upon the necessity that one claiming an exemption for educational purposes must be engaged in "traditional" education. The court said:

Although the complaint here does expressly or by reasonable inference allege the elements specified by sec. 70.11 (4), Stats., necessary to establish a property tax exemption, it is also necessary, because of our ruling in *Engineers & Scientists,* [38 Wis.2d 550, 157 N.W.2d 572

---

[1] Section 70.11, Stats., states:

70.11 Property exempted from taxation. The property described in this section is exempted from general property taxes:

. . .

(4) Property owned and used exclusively by . . . educational . . . associations . . . but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit . . . .

(1968)] that the complaint go further and specifically set forth facts showing that plaintiff is engaged in the kind of traditional educational activities which would entitle it to receive tax exempt status. . . .

The fatal defect of the complaint as now stated, however, is that there are no supporting facts concerning the purposes and functions of the plaintiff. We think more is required, in view of *Engineers & Scientists.* Specific traditional educational activities must be engaged in in order to qualify for tax exemption as an educational association. [Footnote omitted.] *National Foundation v. Brookfield, supra,* at 266–67, 222 N.W.2d at 610.

A new complaint was drafted alleging engagement in traditional educational activities. Again, Brookfield appealed from an order overruling its demurrer to the complaint. In the second appeal, however, the supreme court affirmed. The court held that the complaint set forth sufficient facts to show that International Foundation was engaged in the kind of traditional educational activities which would entitle it to a tax exemption. Proof of those facts must be determined at a trial on the merits. *International Foundation of Employee Benefit Plans, Inc. v. City of Brookfield,* 74 Wis.2d 544, 549–50, 247 N.W.2d 129, 132 (1976).

Following the second appeal, the case was returned to the trial court where the issues were tried before a jury. The jury found that International Foundation was not an educational association, that its property was not owned and used exclusively for the purposes of the association, that its property was not necessary for the location and convenience of the buildings and that the property was not used for nonprofit purposes.

A preliminary question that must be resolved is what standard of review this court is to employ in reviewing the jury's determinations. As noted above, this case was tried to a jury. Both factual disputes and the ultimate

question of whether International Foundation is an educational association were submitted to the jury. However, the ultimate question of whether International Foundation is or is not an educational association is dependent upon a construction of the term "educational association" under sec. 70.11 (4), Stats. The issue is one of statutory construction and therefore is a question of law—not fact. As a result, the issue must be determined by this court without giving any special weight to the conclusions of the jury. *Engineers & Scientists v. City of Milwaukee*, 38 Wis.2d 550, 554, 157 N.W.2d 572, 574 (1968).

Thus, we must look to the facts *ab initio* to determine whether the primary use to which International Foundation's building is put comes within the compass of what the legislature has denominated as an educational association. *Engineers & Scientists v. City of Milwaukee, supra.* The record reveals that the facts are substantially undisputed. The facts are as follows.

Employee benefit plans have long been a staple of negotiated fringe benefits resulting from management-employee bargaining. The Taft-Hartley Act of 1947 gave a great incentive to both management and workers by providing that such pensions would be tax deductible. Taft-Hartley provided, however, that in order for the plan to be tax deductible, the fund must be managed by trustees—half of whom are appointed by management and half by labor. Since the inception of the act, 6,000 Taft-Hartley plans have come into existence.

Some of the trustees who manage these plans are not specially trained to handle the funds. Labor representation on these trustee panels often come from the rank-and-file membership of the union. They are either elected or appointed by their unions to serve as trustees in addition to their regular fulltime jobs. They are not compensated for their work. Representation by manage-

ment on the panel often includes persons not specifically learned in the field of employee benefit plans.

To answer the growing need for informed trustees, International Foundation was organized in 1964 and was designed to inform trustees on subject matters concerning welfare and pension plans. Although the International Foundation has members from different kinds of employee benefit plans, the great majority of trustees are involved in an employee benefit plan envisioned by the Taft-Hartley Act.

The Articles of Incorporation set forth the purposes of International Foundation:

(1) Through education to improve and develop the capabilities of individual Union Trustees, Management Trustees and Administrators of jointly-trusteed health, welfare and pension benefit plans;

(2) To provide educational conferences from time to time for the trustees, administrators, and advisors of such plans; . . .

(3) To promote the training and education of trustees and administrators in the management of health, welfare and pension plans;

(4) To improve public understanding and acceptance of the functions of these plans;

The International Foundation is governed by a board of directors, nine of whom at any given time are labor trustees, nine management trustees and nine administrators (hired employees who carry out the day-to-day management operation of the particular fund). The board's executive committee consists of a president-chairman, a president-elect and a secretary-treasurer. The International Foundation has a regular paid staff to implement foundation business.

International Foundation has 19,000 individual members. The dues are generally not paid by the individual members but are paid by the 3,500 pension fund groups

in the organization. Sixty-five to seventy percent of the individual members are trustees. The remainder includes accountants, lawyers, actuaries, investment counselors, banks, insurance companies and others interested in employee benefit plans.

To implement the education of new trustees, International Foundation sponsors a "New Trustees Institute" four times a year. This institute deals with such subjects as the importance of the labor contract in the trust agreement, the fundamentals of investment, familiarization of the various kinds of investments, the collection of delinquencies, and how trustees can best inform plan members, in understandable language, about their benefit programs.

The "New Trustees Institute" is, however, only a small part of International Foundation's operations. The bulk of instruction is related to the continuing education of the trustees. This continuing education is provided in the form of 35 to 40 seminars per year which are attended by a total of 10,000 to 11,000 people each year. Attendance at these seminars ranges from 75 to 400 persons per event. Additionally, there is an "annual conference" attended by 5,000 to 6,000 people each year. The annual conference lasts five days, and there generally are different sessions going on simultaneously during the day. No attendance records are kept during either the seminars or the annual conference, but the International Foundation will issue a Certificate of Attendance if an individual member submits attendance cards. There is no testing procedure at the end of the seminars or at the annual conference.

An additional benefit of the seminars is the opportunity for trustees to meet and exchange information and ideas with other trustees and to be updated on new investment opportunities, changes in applicable law and

other more general areas relating to the continuing education of trustees.

International Foundation owns one building resting on eleven acres of land. International Foundation claims seven and one-half acres as exempt. The building houses the fifty-five member staff of International Foundation, a library with 480,000 items containing ninety percent of all material in the field of employee benefits, and a research department. The building also contains a printing office for the purpose of preparing textbooks, periodicals for use in the seminars and a monthly news magazine. These printed resources are sent out free to members and deal with subjects involving employee benefits. The building itself does not take up more than two acres. International Foundation maintains, however, that the full seven and one-half acres is necessary in order to create a "campus atmosphere." Yet no classes, seminars or conferences are held in the building. They are held in such places as Hawaii, Miami, Atlanta and New York. The ostensible reason for not holding the seminars in Brookfield is that the members are from all over the United States; therefore, it is better that they attend a conference closer to home. The fact is, however, that the new trustees in 1977, for instance, met in Orlando, Lake Tahoe, Monterey, California and Quebec, Canada. Even the board of directors who come from all over the country and must meet in one place, in the year 1977 for instance, met in places such as Los Angeles, San Francisco and New Orleans rather than at the Brookfield building. Although most conferences and seminars have less than 400 and some as few as 75 people, few if any seminars are held in Wisconsin and none at the building.

It was established that the president-chairman receives a gift at the end of his tenure from the International Foundation in a value not exceding $5,000. The gift is intended as a reward to the president-chairman for his

volunteer time and effort during his term in office. The gift is taken by the president-chairman and his spouse and is used for travel purposes wherever and however long the president-chairman wishes to go as long as the International Foundation does not have to pay more than $5,000 of the trip.

Although there is no dispute as to the facts elicited, the parties dispute what they mean. International Foundation maintains that new trustees are being educated, and this education is primary in nature and not continuing education. They claim that since pension plans affect 60,000,000 people in the United States, this education is necessary for the public benefit. International Foundation further claims that it is providing traditional education because its seminars are not for the benefit of a defined group such as engineers, doctors or lawyers but rather is for the benefit of the 60,000,000 participants in pension plans. International Foundation maintains that the benefits accruing from the education acquired at the seminars provide a direct benefit to the public.

Brookfield maintains that International Foundation is not involved in "traditional" education because no tests are given, no attendance records are kept and no classroom setting is provided. Brookfield further claims International Foundation is not used for purely nonprofit purposes because it gives a substantial benefit to the president-chairman. Brookfield claims the primary goal of International Foundation is not only to provide education but to provide tax exempt vacations for its members as well. Finally, Brookfield asserts that International Foundation does not need the full seven and one-half acres for an exemption because no classes are held on the "campus-like" atmosphere grounds of the foundation.

Before an association may be given a tax exemption, the association seeking to have its property exempt is

required to bring itself within the terms of the exemption statute. *Engineers & Scientists v. City of Milwaukee,* 38 Wis.2d 550, 553, 157 N.W.2d 572, 574 (1968). In *Engineers & Scientists,* the supreme court stated:

This court has frequently stated that taxation is the rule and that exemption from taxation is the exception. [Citations omitted.]

" 'Statutes exempting property from taxation are to be strictly construed and all doubts are resolved in favor of its taxability. To be entitled to tax exemption the taxpayer must bring himself within the exact terms of the exemption statute.' " *Engineers & Scientists, supra,* at 553, 157 N.W.2d at 574.

Thus, International Foundation must clearly show that it provides the type of education envisaged by the legislature or it will not be granted a tax exemption.

To qualify as an educational association under sec. 70.11(4), Stats., an organization must be a nonprofit organization substantially and primarily devoted to educational purposes. *National Foundation v. Brookfield, supra,* at 264–65, 222 N.W.2d at 609. This determination requires a careful analysis of the facts concerning how the association's property is actually being used. *National Foundation v. Brookfield, supra; State Board of Regents v. Madison,* 55 Wis.2d 427, 433, 198 N.W.2d 615, 619 (1972). If the educational function is merely incidental to nonexempt activities or if the facts, as a whole, show that the educational function is incidental to activities which serve the personal interests of the organization's directors or members, an exemption will not be granted. *National Foundation v. Brookfield, supra,* at 265–66, 222 N.W.2d at 610; *Engineers & Scientists v. City of Milwaukee, supra,* at 560–61, 157 N.W.2d at 577–78. Furthermore, to qualify as an educational association, an organization must be devoted to "traditional" educational activities. *National Foundation*

*v. Brookfield, supra,* at 266, 222 N.W.2d at 610. *See also Engineers & Scientists v. City of Milwaukee, supra,* at 558, 157 N.W.2d at 576. Thus, even if International Foundation is a nonprofit organization substantially and primarily devoted to educational purposes, unless the educational purposes or activities are "traditional," International Foundation cannot receive the exemption. The term "traditional" educational activities, however, has not been fully defined by our legislature or the appellate courts. The supreme court has concluded, although reluctantly, that traditional education does not include continuing education and education for the professional advancement of its members. *Engineers & Scientists v. City of Milwaukee, supra,* at 561–62, 157 N.W.2d at 578. Beyond that limitation, however, the term has not been defined. We must therefore determine what is meant by "traditional" educational activities before determining whether International Foundation has met the threshold criteria.

Only a limited number of taxpayers are granted exemptions from taxability. As a general rule, it is in the public interest to stem the erosion of municipal tax bases. *Association of the Bar of New York v. Lewisohn,* 34 N.Y.2d 143, 155–56, 313 N.E.2d 30, 37, 356 N.Y.S.2d 555, 563–64 (1974). The more exceptions allowed, the more inequitable becomes the apportionment of the tax burden. The continuous removal of real property from taxation thus imposes a particular hardship upon local government and the citizen taxpayer.

Accordingly, the legislature mandated that only certain institutions are relieved of their normal tax load. *See generally* sec. 70.11, Stats. The legislature has recognized that some organizations actually serve a public rather than a private purpose and should be relieved of their tax burden. These organizations are mostly engaged in charitable undertakings in the traditional sense, such

as caring for the sick, aged and infirm, educating young people, providing care for the poor, and operating facilities to promote the moral and educational welfare of youth institutions for religious education. *Cf. North Star Research Institute v. County of Hennepin*, 306 Minn. 1, 5–6, 236 N.W.2d 754, 756–57 (1976). These types of organizations do not have gain or profit with which to pay property taxes. Yet, they are devoted to the general well-being of mankind and thus provide a benefit to the taxpaying community. Organizations which "give" gratuitously to the community are thus provided with property tax exemption.

A review of the tax-exemption cases shows that the exemption statute is strictly construed in favor of taxation in order to restrict exemptions to only those organizations with traditionally charitable objectives. The supreme court has sustained or discarded claims of exempt status based upon whether these traditionally charitable objectives are being furthered.[2] Thus it appears that the term "traditional" educational activities must include, as a main ingredient, traditional charitable objectives. The education must be directed at a charitable purpose.

An apt description of traditional charitable objectives is found in *Oasis, Midwest Center for Human Potential*

[2] *Midtown Church of Christ, Inc. v. City of Racine*, 83 Wis.2d 72, 264 N.W.2d 281 (1978); *Family Hospital Nursing Home, Inc. v. City of Milwaukee*, 78 Wis.2d 312, 254 N.W.2d 268 (1977); *Evangelical Alliance Mission v. Village of Williams Bay*, 54 Wis.2d 187, 194 N.W.2d 646 (1972); *Milwaukee Protestant Home for the Aged v. City of Milwaukee*, 41 Wis.2d 284, 164 N.W.2d 289 (1969); *Engineers & Scientists v. City of Milwaukee*, 38 Wis.2d 550, 157 N.W.2d 572 (1968); *Men's Halls Stores, Inc. v. Dane County*, 269 Wis. 84, 69 N.W.2d 213 (1955); *Riverview Hospital v. City of Tomahawk*, 243 Wis. 581, 11 N.W.2d 188 (1943); *Prairie du Chien Sanitarium Co. v. City of Prairie du Chien*, 242 Wis. 262, 7 N.W.2d 832 (1943); *Order of the Sisters of St. Joseph v. Town of Plover*, 239 Wis. 278, 1 N.W.2d 173 (1941); *Northwestern Publishing House v. City of Milwaukee*, 177 Wis. 401, 188 N.W. 636 (1922).

*v. Rosewell,* 55 Ill. App.3rd 851, 858, 370 N.E.2d 1124, 1130 (1977). The court stated that:

Charity does not necessarily mean almsgiving but, in a broader sense, is defined as an application of property for the benefit of an *indefinite number of persons,* either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens on government. . . . However, to qualify property for exemption from taxes, the benefits must *accrue to mankind directly and it is not sufficient that incidental benefits may come to the public as a result of the property's use.* [Emphasis added.] [Citations omitted.]

Applying this definition to an educational association, we have concluded that "traditional" educational activities may not be restricted to a formal academic curricula in a formal school setting in ivy-covered halls. *State Board of Tax Commissioners v. Fort Wayne Sport Club, Inc.,* 147 Ind. App. 129, 258 N.E.2d 874, 881 (1970). However, the education provided must be systematic instruction, either formal or informal, directed to an indefinite class of persons. To meet the charitable objectives, it must be the type of education which benefits the general public directly and must be the type that would ordinarily be provided by the government or that would in some way lessen the burdens of the government.

Based on this definition, we must now determine if International Foundation is devoted to "traditional" educational activities. The main issues are: (1) whether the education provided by International Foundation is provided to an indefinite class of persons and benefits the public directly, and (2) whether the type of education is such that the government is relieved of a burden by International Foundation's program. In determining

what constitutes a "direct benefit to the public," a review of prior cases in this state and in other jurisdictions provides useful parameters.

In *Engineers & Scientists v. City of Milwaukee, supra,* an organization in Milwaukee provided education devoted to the continuing education of graduate engineers. The education provided was primarily devoted to the betterment of a limited group and was intended to, at least partially, improve employment opportunities for that group's members. An exemption was denied to this organization. The court held that one of the main purposes for the education provided by *Engineers & Scientists* was to improve the employment opportunities of the organization's members, and therefore the association's activities were not generally for the public benefit. They were directed to a limited or definite class of people for, at least partially, their own benefit.

In *English Language Center, Inc. v. Town of Wallingford,* 132 Vt. 327, 318 A.2d 180 (1974), property of a school engaged primarily in teaching English to non-English speaking foreign citizens was held not to be exempt from property taxation because the operations were primarily directed towards citizens of foreign countries. These citizens desired to learn English in order to travel in the United States thus furthering their own personal and private interests. Such activity was not of a character so as to be of any substantial benefit to the public of Vermont.

In *South Dakota State Medical Association v. Jones,* 82 S.D. 374, 146 N.W.2d 725 (1966), the State Medical Society was denied tax exemption because the educational benefits were largely limited to a definite class of persons, and the educational purposes were only a part of the Association's objectives. The fact that a more enlightened medical profession benefited the public was laudable, but the indirect benefit was not sufficient to

bring the Society within the class traditionally recognized as charity.

The Minnesota State Bar was also denied tax exemption on the same basis as the South Dakota Medical Association. *See Minnesota State Bar Association v. Commissioner of Taxation,* 307 Minn. 389, 240 N.W.2d 321 (1976). *See also Association of the Bar of New York v. Lewisohn, supra.*

In *American Water Works Association v. Board of Assessment Appeals,* 38 Colo. App. 341, 563 P.2d 359 (1976), the American Water Works Association, whose national headquarters was located in Colorado, was given an exemption because the Association's activities were aimed at giving seminars throughout the country, conducting research, preparing publications for the purpose of improved operation in management and construction of water works systems. The work was devoted to an indefinite class of persons, was primarily educational and was a "gift" to the public since, without it, similar information would have to be developed by the state with a substantially increased cost to the water consuming public.

Based on a review of these cases, the test formulated in *Boston Chamber of Commerce v. Assessors of Boston,* 315 Mass. 712, 54 N.E.2d 199, 202 (1944), is a concise compilation of the consistent views of the courts. The court formulated the view that an institution will be classed as charitable if the dominant purpose of its work is for the public good, and the work done for its members is but the means adopted for this purpose. But, if the dominant purpose of its work is to benefit its members or a limited class of persons, it will not be so classed even though the public will derive an incidental benefit from such work.

The test of whether an organization fits within our definition of traditional education, therefore, depends on

whether the primary benefit accrues to a definite group of persons or the more indefinite "public." Also, this work must be *the* primary purpose of the organization and not merely incidental.

With this definition of "traditional" educational activities, we now can determine if International Foundation has met the necessary criteria.

International Foundation is organized to help a definite rather than an indefinite class of people. Although the trustees do not come from one particular profession, they do come largely from the segment of society that serves joint labor-management employee benefit plans born out of the Taft-Hartley Act. Laudable though it is, education is limited to those with a financial interest in employee pension plans, an interest not shared by all taxpayers and the benefits of which will not accrue to most Americans. Additionally, we note that International Foundation's board of directors does not seem to be mostly composed of rank-and-file labor members who toil in the factories daily and work voluntarily as trustees in their free time as International Foundation seems to suggest. Rather, exhibits on record show that the overwhelming majority of the directors are either lawyers who make part of their living doing pension plan work, union leaders whose job it is to run the daily affairs of the union, and administrators whose very jobs depend upon the fostering of more and better Taft-Hartley plans.

We do not doubt that anyone can join the organization. We do doubt, however, that the organization is for an indefinite class of persons. The direct benefit accrues to persons like those who make up the board of directors and who have a financial interest in pension plan work. The lawyers have an interest in adequately representing their clientele in pension plan work and in promoting their own legal expertise. The employers have an interest in making sure that their portion of the funds are being

handled correctly, since it makes for good labor relations. The union leaders want to see their pensions maintain economic healthiness for their benefit and the benefit of the rank-and-file. The administrators' financial interest in employee benefit plans is obvious. Thus, all the people in the organization have an economic interest in what they are doing. The organization, however, benefits a definite class of persons rather than mankind in general. In addition, nothing the organization does relieves the public or government of a burden. It is therefore not engaged in traditional education for tax exempt purposes.

The purpose of International Foundation is laudable even if confined to a definite class of persons, and the purpose is certainly, at least in part, educational. International Foundation does purport to teach bricklayers, stock clerks, personnel managers or other members of that segment of the working world about the responsibility of tending to the business of managing other peoples' money. International Foundation must, however, bring itself within the exact terms of the exemption statute in order to be entitled to a tax exemption. We are construing the statute strictly. We are bound to rule against International Foundation if there is any doubt under the strict construction rule that International Foundation comes within the purview of the statute. We hold that there is such doubt, and we therefore deny the exemption.

Since we have concluded that International Foundation has not brought itself within the threshold requirement that they are engaged in or provide "traditional" educational activities, we do not reach the other issues raised by Brookfield. We specifically do not reach whether International Foundation is in fact a nonprofit organization nor do we reach the question of whether International Foundation's primary and substantial pur-

pose is to provide education rather than tax-free vacations to its members.

*By the Court.*—Judgment affirmed.