## COURT OF APPEALS
### DECISION
### DATED AND FILED

### June 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

### NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2023AP1432**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV4286

IN COURT OF APPEALS
DISTRICT I

---

CHILDREN'S HOSPITAL OF WISCONSIN, INC.,

PLAINTIFF-APPELLANT,

V.

CITY OF WAUWATOSA,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed.*

Before White, C.J., Donald, P.J., and Colón, J.

¶1    COLÓN, J.  Children's Hospital of Wisconsin, Inc. (CHW) appeals from an order of the circuit court granting the City of Wauwatosa's motion for

summary judgment on the grounds that CHW's North Tower[1] could not have been used exclusively as a tax exempt nonprofit hospital under WIS. STAT. § 70.11(4m) (2023-24)[2] before it was constructed and operational. CHW argues that the North Tower qualifies for a tax exemption as a nonprofit hospital for the 2020 tax year regardless of its construction status because CHW was "readying" the North Tower for use as a nonprofit hospital at the time of assessment. *See Family Hosp. Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 323, 254 N.W.2d 268 (1977) (creating the "readying" rule).

¶2　　WISCONSIN STAT. § 70.11(4m) requires property to be "used exclusively" as a nonprofit hospital to qualify for this tax exemption; thus, property that has not been used for this purpose cannot be considered tax exempt under § 70.11(4m). We conclude that the North Tower does not qualify for the nonprofit hospital tax exemption via the readying rule created by our supreme court in *Family Hospital* because this narrowly tailored exception is only applicable when the property is fully constructed and in the final stages of being readied to be used for an exempt purpose. Accordingly, we affirm.

## BACKGROUND

¶3　　In 2019, CHW began construction of the North Tower as an addition to the CHW facilities on the Milwaukee Regional Medical Complex in the City of

---

[1] The North Tower refers to the now-completed Craig Yabuki Tower located on the Milwaukee Regional Medical Complex in the City of Wauwatosa. We adopt the parties' references to this property as the North Tower. At the time of these proceedings, the North Tower was under construction.

[2] All references to the Wisconsin Statutes are to the 2023-24 version. We note that all relevant portions of the statutes that were in effect on the January 1, 2020 assessment date remain unchanged in the 2023-24 version.

Wauwatosa. CHW had formally leased the parcel of land on which the North Tower is situated and acquired the parcel from Milwaukee County.[3] Based on the North Tower's location in the medical complex, CHW intended to connect the North Tower to the existing hospital building and other surrounding clinic buildings.

¶4     On January 1, 2020, the City assessed the North Tower for the 2020 tax year. During the onsite inspection, the statutory assessor observed that the North Tower consisted of only "some of the excavation, footings, foundation walls, joists set and subfloor or concrete poured, and some of the exterior walls," and estimated that the construction "was approximately 14% completed[.]"

¶5     CHW requested a tax exemption. In CHW's tax exemption request, it claimed that the North Tower would be "used exclusively to provide outpatient services" such as "hospital-based specialty clinics and surgical services." CHW explained that it had not yet used the North Tower for its intended purpose because it was still under construction, but argued that the North Tower was tax exempt under WIS. STAT. § 70.11(4m) because it would be used exclusively as a

---

[3] The City argues that, for the purposes of this case, it is undisputed that CHW owned both the land and the improvements as of the 2020 assessment date due to CHW's concession in its complaint that "[a]t all relevant times, CHW owned the property located in the City of Wauwatosa at 8915 W. Connell Court[.]" However, we note that the record supports, and CHW states in its briefing, that CHW owned the North Tower and leased the underlying land from Milwaukee County on the 2020 assessment date. Neither party argues that whether CHW leased the land is relevant to the issue on appeal, which is whether the readying rule can apply to partially constructed buildings; therefore, we do not discuss it further. *See* WIS. STAT. § 70.11(4m).

nonprofit hospital once construction was completed.[4]  The City disagreed and determined that the North Tower was not tax exempt under § 70.11.  The City then assessed the property.  Based on that assessment, in December of 2020, a tax bill was issued by the City to CHW for a total net property tax of $122,870.15, which CHW timely paid.

¶6      On July 21, 2021, CHW filed a summons and complaint with the circuit court alleging that the City's 2020 tax assessment was unlawful because of its inclusion of the North Tower, which CHW argues was exempt from property taxes under WIS. STAT. § 70.11(4) and (4m).  The City answered and moved for summary judgment.  The City argued that, as a matter of law, a partially constructed property cannot be tax exempt under § 70.11(4) and (4m) because both subsections require the property to be used exclusively for an exempt purpose and do not contemplate an exemption for alleged future use.  CHW responded that *Family Hospital*'s readying rule allows property to be tax exempt, even if it is not presently being used for an exempt purpose, so long as the property is being "readied" to eventually be used for an exempt purpose.

¶7      At the motion hearing, the circuit court found that there were no genuine issues of material fact surrounding the dispositive question of whether partially constructed buildings that are not being used for an exempt purpose can nonetheless be exempt from taxation under the readying rule.  The court analyzed

---

[4] CHW's tax exemption request provided multiple claims for tax exemption for the North Tower, including: (1) under the preamble to WIS. STAT. § 70.11; (2) as county owned land leased to CHW under § 70.11(2); (3) as property used exclusively for educational purposes under § 70.11(4); (4) as property used exclusively for benevolent purposes under § 70.11(4); and (5) as property used exclusively as a nonprofit hospital under § 70.11(4m).  On appeal, CHW only argues that the North Tower is tax exempt as a nonprofit hospital via the readying rule.

a number of cases that discussed the readying rule and found that these cases all relied on whether the building at issue was fully constructed and equipped, like the building in *Family Hospital* was, when deciding whether the rule applied. *See id.*, 78 Wis. 2d at 323; *FH Healthcare Dev., Inc. v. City of Wauwatosa*, 2004 WI App 182, ¶36, 276 Wis. 2d 243, 687 N.W.2d 532; *Group Health Co-op. of Eau Claire v. DOR*, 229 Wis. 2d 846, 859, 601 N.W.2d 1 (Ct. App. 1999); *The Dominican Nuns v. City of La Crosse*, 142 Wis. 2d 577, 580, 419 N.W.2d 270 (Ct. App. 1987); *Asbury United Methodist Church v. City of La Crosse*, No. 09-CV-617-WMC, 2010 WL 3363378, at *9 (W.D. Wis. Aug. 23, 2010).

¶8      The circuit court then discussed CHW's reliance on a section of the Wisconsin Property Assessment Manual (the WPAM)[5] that recommends that a new construction, attached to a hospital, that remains unfinished on the assessment date, should be tax exempt when certain conditions are met. *See* WPAM 13-59. The court found that CHW could not rely solely on the WPAM to support its interpretation of the readying rule because the WPAM is designed to give guidance that conforms to the law, and in this instance, it conflicts with it. Ultimately, the circuit court granted the City summary judgment finding that the readying rule could not apply to partially constructed buildings; thus, the North Tower could not qualify as a tax exempt nonprofit hospital because it was only about 14% constructed on the assessment date.

¶9      CHW appeals.

_____

[5] The WPAM is published annually by the Wisconsin Department of Revenue pursuant to WIS. STAT. § 73.03(2a). All references to the WPAM are to the 2020 version—available at https://www.revenue.wi.gov/documents/wpam20.pdf—which is the version the parties and circuit court relied on.

**DISCUSSION**

¶10     The circuit court granted summary judgment in the City's favor on the basis that a partially constructed building could not, as a matter of law, be tax exempt under WIS. STAT. § 70.11(4m). The question before us is whether a partially constructed building can qualify as a tax exempt nonprofit hospital under § 70.11(4m) if it will eventually be used for such an exempt purpose.

¶11     We review the circuit court's grant of a summary judgment independently, "applying the same standard as the circuit court." *Saint Joseph's Hosp. of Marshfield, Inc. v. City of Marshfield*, 2004 WI App 187, ¶9, 276 Wis. 2d 574, 688 N.W.2d 658. "A party is entitled to summary judgment if there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law." *Id.*; WIS. STAT. § 802.08(2). Our consideration of this issue involves a question of statutory interpretation which we also review independently. *Wauwatosa Ave. United Methodist Church v. City of Wauwatosa*, 2009 WI App 171, ¶6, 321 Wis. 2d 796, 776 N.W.2d 280.

¶12     "In Wisconsin, the taxation of property is the rule and exemption is the exception." *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 80, 591 N.W.2d 583 (1999). There is a presumption that property is taxable and "the party seeking the exemption bears the burden of proving that it falls within a statutory exemption." *Id.* at 80-81; WIS. STAT. § 70.109. This presumption furthers the public interest by "stem[ming] the erosion of municipal tax bases" to ensure that the taxpayer is not overloaded with an inequitable portion of the tax burden. *International Found. of Emp. Ben. Plans, Inc. v. City of Brookfield*, 95 Wis. 2d 444, 454, 290 N.W.2d 720 (Ct. App. 1980), *aff'd*, 100 Wis. 2d 66, 301 N.W.2d 175 (1981).

6

¶13 "[W]e apply a 'strict but reasonable construction' to tax exemption statutes" where any ambiguity "must be resolved against the party seeking the exemption." *Deutsches Land*, 225 Wis. 2d at 80-81 (citation omitted); *Columbus Park Hous. Corp. v. City of Kenosha*, 2003 WI 143, ¶11, 267 Wis. 2d 59, 671 N.W.2d 633. The "[s]tatutory language is given its common, ordinary, and accepted meaning … interpreted in the context in which it is used … and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶14 Under WIS. STAT. § 70.11(4m), property used as a nonprofit hospital, as specifically defined by the statute, can be tax exempt. "In order to qualify for the not-for-profit hospital exemption, a property must be 'used exclusively for the purpose[] of [a] hospital."[6] *Covenant Healthcare Sys., Inc. v. City of Wauwatosa*, 2011 WI 80, ¶24, 336 Wis. 2d 522, 800 N.W.2d 906 (quoting WIS. STAT. § 70.11(4m)(a)) (alterations in original).

¶15 CHW argues that the readying rule applies here and stands for the proposition that property can be tax exempt regardless of whether the building is fully constructed and in use so long as, under the totality of the circumstances, it appears that the property will eventually be used for an exempt purpose, and some

---

[6] WISCONSIN STAT. § 70.11(4m)(a) provides in relevant part, that property exempted from general property taxes is:

> Real property owned and used and personal property used exclusively for the purposes of any hospital of [ten] beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, voluntary association, foundation or trust…. This exemption does not apply to property used for commercial purposes, as a health and fitness center or as a doctor's office.

action has been taken to ready the property for the future exempt use. Thus, CHW maintains that the North Tower was exempt even though it was only 14% constructed. In response, the City contends that CHW's interpretation of the readying rule is too broad and argues that the rule only allows property that is fully constructed and in the final stages of being operational on the assessment date to qualify as an exempt nonprofit hospital under WIS. STAT. § 70.11(4m).

¶16 We start by discussing how our supreme court created the readying rule in **Family Hospital** before analyzing subsequent case law. In **Family Hospital**, our supreme court considered whether a nursing home that was fully constructed but not yet occupied by patients was used exclusively for benevolent purposes, pursuant to WIS. STAT. § 70.11(4), on the assessment date. **Family Hospital**, 78 Wis. 2d at 323. The court noted the circuit court's findings that "the nursing home was equipped and in the process of readying itself for the receipt of its first patient," that the nursing home was not used for any other purpose, and that the delay in receiving patients was only "due to the necessity of acquiring a full complement of operating personnel." **Id.** It then held that "the nursing home should not be taxable during the period in which it was readying itself for its benevolent purpose." **Id.**

¶17 The breadth of the readying rule was later raised in **Group Health** when this court was tasked with deciding whether property was tax exempt when the taxpayer had purchased the property and submitted plans and a permit application in preparation to start construction on a health center. **Id.**, 229 Wis. 2d at 856-58. The court emphasized that the taxpayer's "situation was very different from the situation in **Family Hospital**" because the nursing home in **Family Hospital** "was fully constructed and equipped on the assessment date" and only "not operational because it was not yet fully staffed." **Group Health**, 229 Wis. 2d

8

at 859. The court held that the readying rule could not be "stretched" to apply to property where the property had merely been purchased in the hopes of developing a health clinic and construction had not even commenced yet. *Id.* Indeed, the court noted that the property was vacant and unused at the date of assessment. *Id.* at 858.

¶18 In *FH Healthcare* the court addressed whether the readying rule applied to a partially constructed building connected to an existing hospital that the taxpayer intended to use for an exempt purpose once completed. *Id.*, 276 Wis. 2d 243, ¶¶2, 9, 33. The court stated that "there is no indication that, as in *Family Hospital*, the FHHD building was fully constructed and equipped, and in the final stages of readying itself for an exempt purpose." *Id.*, ¶36. The court also discussed how the taxpayer failed to provide anything more than a conclusory statement that the building would eventually be used for an exempt purpose, but noted that "the relevant case law appears to be concerned with the use of the property at the time of assessment[.]" *Id.* The court finally concluded that the readying rule did not apply to the building at issue. *Id.*, ¶¶36-37.

¶19 Because in both cases this court discussed the circumstances specific to each case instead of holding that the readying rule only applies to fully constructed buildings, CHW argues that *Group Health* and *FH Healthcare* support that the readying rule applies to partially constructed buildings. CHW contends that the assessor must look at the totality of the circumstances to determine whether the property is being readied for future exempt use. CHW's argument misconstrues the holdings regarding the readying rule in these cases. The court determined that the readying rule did not apply by concluding that the properties at issue were unlike the property in *Family Hospital* because the

properties were not "fully constructed and equipped[.]" *See **Group Health***, 229 Wis. 2d at 859; ***FH Healthcare***, 276 Wis. 2d 243, ¶36.

¶20     Furthermore, if our supreme court had intended to make the readying rule apply as expansively as CHW suggests, then it would have clearly stated so in ***Family Hospital***; instead, the court confined its holding to a fully constructed and equipped building in the final stages of readying itself for tax exempt use. *See **id.***, 78 Wis. 2d at 323; *see also **The Dominican Nuns***, 142 Wis. 2d at 579 ("Tax exemptions are matters of legislative grace and there must be clear evidence that such grace was intended before we will so find in a given case.")  Therefore we conclude that the case law supports that the inquiry into whether the readying rule applies depends on whether a fully constructed building is in the final stages of readying itself for exempt use on the assessment date.[7]

¶21     CHW also argues that the readying rule must apply to partially constructed buildings because a contrary interpretation would lead to "absurd results."  CHW reasons that because the land was previously tax exempt when it was vacant, it would be absurd for the North Tower to be taxable during

---

[7] Additionally, CHW argues that the WPAM supports its interpretation of the readying rule case law. *See* WPAM 13-59, 20-7.  However, CHW cannot rely solely on the WPAM to support an interpretation contrary to the statutes and case law. *See **Doneff v. City of Two Rivers Bd. of Rev.***, 184 Wis. 2d 203, 217, 516 N.W.2d 383 (1994) ("[T]he legislature intended that the [WPAM] conform to, rather than establish, Wisconsin law.")  In light of our conclusion that ***Family Hospital Nursing Home, Inc. v. City of Milwaukee***, 78 Wis. 2d 312, 254 N.W.2d 268 (1977), ***Group Health Co-op. of Eau Claire v. DOR***, 229 Wis. 2d 846, 601 N.W.2d 1 (Ct. App. 1999), and ***FH Healthcare Development, Inc. v. City of Wauwatosa***, 2004 WI App 182, 276 Wis. 2d 243, 687 N.W.2d 532, support that the readying rule only applies to fully constructed buildings, we do not discuss CHW's argument that the WPAM reinforces its interpretation of the case law and the application of its interpretation to the North Tower further. *See **Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.

construction only to then become tax exempt after construction has been completed.

¶22    CHW's argument conflates the individual tax exemptions to propose an interpretation of the readying rule that would prioritize maintaining the overall tax exempt status of a property, even if the property fails to fall within the plain meaning of any of the exemptions listed in WIS. STAT. § 70.11.  This interpretation would run contrary to the established law that determines how property qualifies for tax exemptions.  *See Wauwatosa Ave.*, 321 Wis. 2d 796, ¶7 ("To be entitled to tax exemption the taxpayer must bring himself [or herself] within the exact terms of the exemption statute."  (Citation omitted)); *see also Wisconsin Evangelical Lutheran Synod v. City of Prairie du Chien*, 125 Wis. 2d 541, 545 n.3, 373 N.W.2d 78 (Ct. App. 1985) (stating that vacant property is not tax exempt by default).

¶23    "[A]ll presumptions are against tax exemption, and an exemption should not be extended by implication."  *Southwest Airlines Co. v. DOR*, 2021 WI 54, ¶26, 397 Wis. 2d 431, 960 N.W.2d 384.  This presumption originates from "the public interest to stem the erosion of municipal tax bases.  The more exceptions allowed, the more inequitable becomes the apportionment of the tax burden.  The continuous removal of real property from taxation thus imposes a particular hardship upon local government and the citizen taxpayer."  *International Found.*, 95 Wis. 2d at 454.

¶24    Thus, property is only tax exempt if it meets the requirements listed in the statute.  This is true even if the property at issue is owned by a taxpayer that tends to use its properties for exempt activities.  *See Deutsches Land*, 225 Wis. 2d at 87 ("We have repeatedly stressed that a benevolent association must do more

11

than own or control property to claim an exemption; it must also use that property for benevolent purposes."); **The Dominican Nuns**, 142 Wis. 2d at 581 (concluding that "property … not being 'used' for any of the [taxpayer's] regular activities or benevolent purposes" did not qualify for an exemption).

¶25 For the North Tower to be tax exempt as a nonprofit hospital it must fit within the exact terms of WIS. STAT. § 70.11(4m). *See* **Wauwatosa Ave.**, 321 Wis. 2d 796, ¶7. Whether the property without the incomplete North Tower improvement was tax exempt under a different exemption in prior years is irrelevant to the question of whether the North Tower qualifies as a tax exempt nonprofit hospital under §70.11(4m) on the 2020 assessment date. Although CHW may find it inconvenient for the North Tower to be taxable because its construction overlapped with the 2020 assessment date, it is not an absurd outcome.

¶26 It is the legislature's duty to determine where to draw the line regarding when property is eligible for tax exemption, and this line must be drawn somewhere.[8] The plain language of WIS. STAT. § 70.11(4m) indicates that exemption eligibility begins when property is "used" as a nonprofit hospital. The readying rule provides some flexibility but cannot be stretched as far as CHW contends because such a broad interpretation of a judicially created rule would conflict with the plain language of § 70.11, effectively usurping the legislature's

---

[8] "Under our tripartite system of government, it is the duty of this court to apply the policy the legislature has codified in the statutes, not impose our own policy choices—to do otherwise would render this court little more than a super-legislature." **Columbus Park Hous. Corp. v. City of Kenosha**, 2003 WI 143, ¶34, 267 Wis. 2d 59, 671 N.W.2d 633. Therefore, we interpret WIS. STAT. § 70.11(4m) "as written, not interpret it as we think it should have been written." **Id.**

authority as the policymaker by fundamentally changing the point at which property can qualify for this exemption. While we recognize that tax exemption for alleged-hospital buildings that are under construction on the assessment date may serve a beneficial public purpose, such an exemption "must be clearly spelled out by the legislature." *Columbus Park*, 267 Wis. 2d 59, ¶40 (citation omitted).

## CONCLUSION

¶27    For the foregoing reasons, we conclude that the readying rule is only applicable to fully constructed buildings in the final stages of being readied to be used for an exempt purpose. Any other interpretation would leave tax exemption to the eye of the beholder and if tax exemption is in the eye of the beholder then the beholder has to be the legislature. Therefore, we also conclude that the partially constructed North Tower cannot be tax exempt as a nonprofit hospital under WIS. STAT. § 70.11(4m) via the readying rule. Accordingly we affirm the circuit court's order.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.

No.   2023AP1432 (D)


¶28   WHITE, C.J. (*dissenting*).   This court's construction of the property tax exemption statutes should be "strict but reasonable."   ***Columbia Hosp. Ass'n v. City of Milwaukee***, 35 Wis. 2d 660, 668, 151 N.W.2d 750 (1967).   Determining whether a property qualifies for an exemption is based on examining "the facts of the particular case regarded as a whole" including the "organizational structure and the method of operation of an institution" claiming the exemption.   *See* ***Family Hosp. Nursing Home, Inc. v. City of Milwaukee***, 78 Wis. 2d 312, 319, 254 N.W.2d 268 (1977).   Because I believe that when an organization constructs a property that will qualify for an exemption under WIS. STAT. § 70.11(4m), such as a new hospital, the preparation and construction—the "readying," as our supreme court has described it—is indispensable to its use, and therefore such property should also qualify for the exemption during this prerequisite stage.   *See* ***Family Hosp. Nursing Home, Inc.***, 78 Wis. 2d at 323.

¶29    Here, there is a dispute over whether the North Tower,[1] based on the plans and permits, will qualify for an exemption.   Whether the North Tower qualifies for an exemption during construction should be based on whether it will qualify for an exemption once the building is complete and operational.   As I believe that question must be resolved in order to determine the property's exemption status during construction, I would reverse the summary judgment and

---

[1] I adopt the Majority's and the parties' references to the property in question as North Tower.

remand this case to the circuit court for further proceedings. Accordingly, I respectfully dissent.

¶30 The Majority concludes that a property under construction cannot satisfy the requirement of the exemption that the property must be "used" as a non-profit hospital under WIS. STAT. § 70.11(4m). I think this interpretation is overly narrow. As our supreme court held, "a strict construction is nonetheless a construction, and an exemption statute need not be given an unreasonable construction or the narrowest possible construction." *Columbia Hosp. Ass'n*, 35 Wis. 2d at 668. A more reasonable interpretation would consider how the construction of an exempt property is an indispensable part of having non-profit properties, like hospitals, provide a public good to our residents. I also believe a property with construction underway complies with the readying rule in *Family Hospital*.

¶31 The legislature relieves certain organizations engaged in charitable undertakings from their tax burden because "they are devoted to the general well-being of mankind and thus provide a benefit to the taxpaying community." *International Found. of Emp. Ben. Plans, Inc. v. City of Brookfield*, 95 Wis. 2d 444, 454-55, 290 N.W.2d 720 (Ct. App. 1980), *aff'd*, 100 Wis. 2d 66, 301 N.W.2d 175 (1981). "[S]pecific and limited property tax exemptions are based on a theory of mutual consideration: the public relieves an organization of its property tax burden when it provides a public benefit." *University of Wis. Med. Found., Inc. v. City of Madison*, 2003 WI App 204, ¶11, 267 Wis. 2d 504, 671 N.W.2d 292. Most construction, but especially that of modern healthcare facilities, cannot spring up from vacant land to a fully functioning hospital in less than a tax year. The Majority creates a rule barring a property tax exemption during construction. This will lead to confusion (and litigation) over the question of what period is

2

sufficient to constitute "readying." Overall, this decision will have a chilling effect on the development of non-profit organizations that provide a public benefit.

¶32 There are three Wisconsin cases that I believe are instructive: *Columbia Hosp. Ass'n*, where the hospital exemption was considered in terms of practical and reasonable needs to the functioning of the hospital; *Family Hosp. Nursing Home, Inc.*, where the readying rule appears; and *FH Healthcare Dev., Inc. v. City of Wauwatosa*, 2004 WI App 182, 276 Wis. 2d 243, 687 N.W.2d 532, where a property owner failed to provide facts about an under construction property sufficient to establish an exemption. I discuss each in turn.

¶33 In *Columbia Hospital*, our supreme court addressed a requested exemption for off-site housing for hospital interns and resident doctors employed by a hospital that qualified for the exemption under WIS. STAT. § 70.11(4m). *Columbia Hosp. Ass'n*, 35 Wis. 2d at 671. The court considered that "conducting an internship and residency program is a valuable and reasonably necessary function of a large modern hospital and to attain such purposes it is reasonably necessary for [the hospital] to offer housing accommodations to secure interns and residents." *Id.* at 674. It concluded that these separate parcels containing housing also qualified as exempt properties because they were of "reasonable necessity" to the functioning of the hospital. *Id.* at 671.

¶34 The guidance in *Columbia Hospital* for this case is that a reasonable construction of the exemption statutes must consider the practical and necessary use of the property—the substance of its mission and not only the form of the building. The *Columbia Hospital* court concluded it must not limit the meaning of the word "hospital" in WIS. STAT. § 70.11(4m) to "the primary purpose of a hospital or to a typical small hospital offering limited facilities." *Columbia Hosp.*

3

*Ass'n*, 35 Wis. 2d at 668. Instead, the court concluded that "[t]he section has carefully expressed the exemption in terms of a hospital whose primary purpose is diagnosis, treatment and care and this contemplates that a hospital may have other functions and objects, whether they be directly or indirectly associated with the care of the sick." *Id.* Therefore, the court concluded that housing for interns and residents were necessary for the hospital to attract quality candidates and fulfill its mission. Similarly, I believe constructing a structure is necessary for a hospital property to exist and provide "diagnosis, treatment and care." *See* WIS. STAT. § 70.11(4m)(a).

¶35 In *Family Hospital*, our supreme court considered how to determine whether a nursing home was "a benevolent nursing home under sec. 70.11(4), Stats.," which would then make it "exempt from certain real and personal property taxes[.]" *Family Hosp. Nursing Home, Inc.*, 78 Wis. 2d at 314. In that case, the nursing home was not in actual use as a nursing home at the time of the tax assessment. The court held this non-use was not dispositive, concluding that "the nursing home should not be taxable during the period in which it was readying itself for its benevolent purpose." *Id.* at 323. The court's inquiry focused on the facts and circumstances of the property as a whole, not looking only at operational use.

¶36 In the *Family Hospital* court's thorough analysis, it rejected a bright line test for the language of the articles of incorporation, which did not include the word "benevolent;" the separate incorporation of the facility due to the Federal Housing Administration's requirements for the mortgage; or the location of the facility. *Id.* at 314-15, 321. It rejected the City's argument that if the nursing home was located in a hospital wing—contiguously attached—it would qualify, but that a separate facility would not. *Id.* at 321. It considered that the nursing

home had the same board of trustees as the hospital, it was licensed by the State Board of Health, it was certified for federal medical assistance programs; and it was exempt from state sales tax and state and federal income tax. *Id.* at 316. Further, it considered that there was no claim the facility was operated for pecuniary profit. *Id.* at 321. It also rejected a challenge that the property was not in actual use, but held that the property was "readying" for operation meant that an exemption was possible. *Id.* at 323. Ultimately, considering the facts of the property as a whole, our supreme court concluded that the nursing home qualified for the property tax exemption for a benevolent institution.

¶37　As guidance for this case, the holdings of *Family Hospital* show that (1) a determination of exemption status depends on the facts and circumstances of the property as a whole and (2) that having the building in preparation to be used, but not in use, was not fatal to the exemption. Building a non-profit hospital is a huge enterprise with years of planning and funding in addition to the physical construction of the building, employment of staff, and admission of patients. The *Family Hospital* court discussed issues that could be determined before the facility was in use for patients, reviewing the nursing home's corporate structure, government qualifications, licensure, and non-profit management. Here, the Majority focuses on a narrow interpretation of "use" and does not consider the property as a whole and whether its organizational structure and methods of operation will qualify for an exemption when complete. *Id.* at 319.

¶38　The third instructive case is *FH Healthcare Dev., Inc. v. City of Wauwatosa*, 2004 WI App 182, 276 Wis. 2d 243, 687 N.W.2d 532. There, a not-for-profit holding company affiliated with Froedtert Hospital sought an exemption for a new building it developed in which space was leased to a medical laboratory services company, which had originated from Froedtert, but became independent.

5

*Id.*, ¶¶7-9. The laboratory services company provided laboratory testing for Froedtert at cost, but with a market-rate pricing structure, designed to cover overhead and generate income, with other clients. *Id.*, ¶7. The ***FH Healthcare*** court rejected an exemption for the property while it was under construction because the holding company "failed to provide us with enough [facts] to establish that it was being readied for an exempt purpose." *Id.*, ¶36. However, the question of a property tax exemption came down to "whether the property is used for commercial purposes; if so, the exemption does not apply, regardless of whether the property is 'reasonably necessary' to the hospital's primary and secondary purposes or who uses the equipment." *Id.*, ¶19. This court concluded that the commercial purposes of the laboratory barred the exemption.

¶39 As guidance for this case, I believe ***FH Healthcare's*** holding shows that the court's considerations focused on whether the property would be exempt when complete—in that case, an exemption was precluded by its commercial use. However, I note that the use of the property during construction was not dispositive to the issues. My takeaway is that this court should consider the property's contemplated future use in the exemption inquiry, not limit our analysis to use during construction.

¶40 In reviewing this issue, I looked at other states that have analyzed the question of property tax exemptions during construction more frequently than Wisconsin has. While it is difficult to find exact parallels, the theoretical underpinnings are informative. There is undoubtedly a split in the treatment of property under construction. Many states regularly offer exemptions during construction; common reasoning included that the future exemption for the completed property was not in dispute, that construction was considered part of the use of the property, and that courts exempted property during construction as

part of the organization's efforts to serve the public good.  However, other states, like the Majority, focus on actual use of the property during the time of construction and decline to allow an exemption.

¶41    Many states allow a property tax exemption during construction of a property that will be exempt upon completion.  Generally, the property's future qualification for an exemption is undisputed.  *See e.g., Utah Cnty. By & Through Cnty. Bd. of Equalization of Utah Cnty. v. Intermountain Health Care, Inc.*, 725 P.2d 1357, 1359 (Utah 1986) (holding that in Utah a hospital under construction qualifies for an exemption "when its use is irrevocably committed to purposes that will qualify for a charitable exemption at its completion"); *Carney v. Cleveland City Sch. Dist. Pub. Libr. of Cuyahoga Cnty.*, 169 Ohio St. 65, 69, 157 N.E.2d 311 (1959) (holding that in Ohio the prospective use doctrine applied to properties during construction because "it is not necessary that actual physical use of property for an exempt purpose be commenced before it is entitled to be exempted from taxation"); *State v. Second Church of Christ, Scientist*, 185 Minn. 242, 244, 240 N.W. 532 (1932) (holding that in Minnesota the exemption for a church under construction is determined by "the use to which the property is devoted, or about to be devoted.  It is not necessarily the use or nonuse of the property at the exact time when the tax is levied"); *City of Fayetteville v. Phillips*, 306 Ark. 87, 94-95, 811 S.W.2d 308 (1991) (holding that in Arkansas, a "public entity seeking an exemption should be permitted appropriate opportunity to establish by proof its claim of exemption … otherwise all public property under construction might be subject to taxation based on some perceived chance of a non-public benefit or use").

¶42    Further, many states allow an exemption during construction under the reasoning that construction of a property can itself be an exempt use of the

7

property because it is necessary preparation. *See e.g., **Hedgecroft v. City of Houston***, 150 Tex. 654, 661-62, 244 S.W.2d 632 (1951) (holding that in Texas, an exemption during construction of a polio clinic was allowed because "[p]reparation for and operation of the clinic are both indispensable" and "[b]oth constituted a use by [the polio clinic operator] of the premises"); ***Overmont Corp. v. Board of Tax Revision of City of Philadelphia***, 479 Pa. 249, 251, 388 A.2d 311 (1978) (holding that in Pennsylvania, "when a charity is constructing facilities, that charity is 'using' its property for charitable purposes so as to come within the scope of the General County Assessment Law"); ***Abbott Ambulance, Inc. v. Leggett***, 926 S.W.2d 92, 96 (Mo. Ct. App. 1996) (holding that in Missouri, a charity's construction of a new headquarters would qualify for an exemption because the charity's "use of the property in constructing the facility as a prerequisite to [an exempt] use should likewise be considered a charitable use"); ***City of Richmond v. Richmond Mem'l Hosp.***, 202 Va. 86, 95, 116 S.E.2d 79 (1960) (holding that in Virginia, an exemption during construction of a hospital was allowed because it "existed as a corporate entity before it was a hospital in brick and mortar, and as a corporate entity it was occupying and using its real estate during the two years in question to develop the hospital in the physical sense").

¶43 Another recurring idea in states that allow for an exemption during construction is that it is for the public good that non-profit organizations can devote resources to their works for the benefit of society. *See e.g., **Utah Cnty. By & Through Cnty. Bd. of Equalization of Utah Cnty.***, 725 P.2d at 1359 (holding that in Utah, it was "consistent with the constitutional policy of encouraging private charities" to allow certain exemptions and that the public benefit of charities could only be diminished "if monies committed to the charity must be

used to pay *ad valorem* property taxes"); ***Overmont Corp.***, 479 Pa. at 251 (holding that in Pennsylvania, to deny an exemption during construction "would tend to impede the purposes for which the tax exemption was created"); ***South Iowa Methodist Homes, Inc. v. Board of Rev. of Cass Cnty.***, 257 Iowa 1302, 1305, 1309, 136 N.W.2d 488 (1965) (holding that in Iowa, subjecting a "property to taxation during the construction period would tend to defeat the object of the exemption statutes").

¶44    Nonetheless, there are certainly states that bar an exemption during construction, usually premised on the idea that the intended use of a building does not qualify for an exemption. *See e.g.,* ***Grace & Peace Fellowship Church, Inc. v. Cranford Twp.***, 4 N.J. Tax 391, 400 (N.J. Tax Ct. 1982) (holding that New Jersey does not provide exemptions for intended use); ***Smith v. American Lung Ass'n of Gulfcoast Fla., Inc.***, 870 So. 2d 241, 242 (Fla. Dist. Ct. App. 2004) (holding that in Florida "the ongoing construction of a building[] does not qualify for an exemption even though the intended future use of the building will qualify"); ***In re Vienna Baptist Church***, 241 N.C. App. 268, 272, 773 S.E.2d 97 (N.C. Ct. App. 2015) (holding that in North Carolina, a half-constructed church

did not qualify for an exemption because the building was not exclusively used for religious purposes).[2]

¶45 I believe that the current statutory language allows for a construction phase to satisfy the exclusive use requirement for the property tax exemption for hospitals when the facts support that there is no dispute over the exemption when the property is completed.[3] In my opinion, that is the true issue and dispute in this case—whether the North Tower qualifies for an exemption as a completed and operational entity. Taxation during the construction process should flow from the use of the property, in a reasonable interpretation of WIS. STAT. § 70.11(4m). Therefore, I would remand this case for further proceedings.[4] I respectfully dissent.

---

[2] I note that some states have expressly included construction as a use for exemption of certain types of property. It appears the North Carolina legislature amended the relevant statutes effective for taxes imposed after the 2012 tax year analyzed in *In re Vienna Baptist Church*, 241 N.C. App. 268, 773 S.E.2d 97 (2015). The statutes were amended to exempt such property "under construction and intended to be wholly and exclusively used by its owner for religious purposes upon completion." N.C. GEN. STAT. § 105-278.3(g)(3) (2023-24); 2015 N.C. Sess. Laws,185, § 1. An Idaho law provides that "[a]ll improvements to and construction on the real property, while it is being prepared for use as a hospital, shall be exempt from taxation." IDAHO CODE § 63-602D(3) (2023-24). After a California court rejected an exemption during construction because there was no actual use in *Cedars of Lebanon Hosp. v. Los Angeles Cnty.*, 35 Cal. 2d 729, 743, 221 P.2d 31 (1950), the California legislature then amended its property tax exemption statutes to provide that "'property used exclusively for religious, hospital or charitable purposes' [in this section] shall include facilities in the course of construction on or after the first Monday of March, 1954…. CAL. REV. & TAX. CODE § 214.1 (1951-52). California property tax law was amended since then and the construction exemption appears narrowed. Nevertheless, *Cedars of Lebanon* and its aftermath represent the legislature's control over the topic.

[3] As the Majority's holding is premised on the "used exclusively" language in WIS. STAT. § 70.11(4m), I would presume that at least a dozen other subsections that use similar language would be covered the same prohibition. *See* § 70.11(4), (5), (6), (13), (14), (16), (17), (25), (28), (32), (33), (46).

[4] Reviewing the record in this case, CHW moved to join this case, challenging the 2020 tax year, with a later challenge of the 2021 tax year for being denied the exemption or paying excessive taxation. The circuit court denied that motion.

10